UNITED STATES, Appellee

v.

Anthony P. DINATALE, Technical
Sergeant, U.S. Air Force,
Appellant.

No. 95–0053.
CMR No. 30000.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 1, 1995.

Decided Aug. 29, 1996.

For Appellant: *Lieutenant Colonel Joseph L. Heimann* (argued); *Colonel Jay L. Cohen* (on brief); *Major Ormond R. Fodrea.*

For Appellee: *Captain Libby A. Brown* (argued); *Colonel Jeffery T. Infelise, Colonel Thomas E. Schlegel, Captain Timothy G. Buxton* (on brief); *Lieutenant Colonel Michael J. Breslin.*

*Opinion of the Court*

EVERETT, Senior Judge:

At his general court-martial at George Air Force Base, California, for committing indecent acts on minors with intent to satisfy his lust (2 specifications), *see* Art. 134, Uniform Code of Military Justice, 10 USC § 934, appellant pleaded guilty in each instance to a lesser-included offense. After a contested trial on the greater offenses, however, the officer members convicted him as charged and sentenced him to a bad-conduct discharge, confinement for 2 years, and reduction to airman first class. The convening authority approved these results, and the Court of Military Review [1] affirmed.

In this Court, appellant complains that the military judge abused his discretion by denying the defense challenge for cause against the president of the court-martial panel, Colonel David. Appellant argues that the president's earlier review of the privileged report and findings of his sanity board, in her capacity as Chief of Hospital Services at George Air Force Base, "raises substantial doubt as to the fairness and impartiality of Colonel David as a court member." Final Brief at 2. *See* RCM 912(f)(1)(N), Manual for Courts–Martial, United States (1995 ed.). On this record, however, we do not find any clear abuse of discretion.

**I**

When the charges against appellant were referred to a general court-martial for trial, appellant requested a sanity board inquiry. *See* RCM 706. The board's conclusion was "Axis I: ... Adult antisocial behavior as manifested by performing sexually indecent acts upon his children" and "Axis II: ... No diagnosis, although avoidant traits are evidenced." This report was published on March 10, 1992; sometime thereafter it was reviewed by the Chief of Hospital Services, Colonel David, and then by the hospital commander.

Approximately one month later—on April 14, 1992—this same Colonel David sat as the president of appellant's court-martial. After general *voir dire* of the panel [2], defense counsel asked to question Colonel David individually. During that examination, Colonel David acknowledged that she reads the "summary" of each sanity board report from that hospital; but she indicated that she did not "recall" appellant's report specifically. Defense counsel then asked, "[I]f information were brought out about the results of that or maybe some background information with regards to him or the offenses, is there a possibility that it might trigger some recollection?" Colonel David responded, "I don't know."

At this point, attention turned to defining exactly what Colonel David's review encompassed:

> TC What exactly do you review in regard to your report, ma'am?
>
> MEM (Col David): Okay, I review what the psychologist writes down, essentially saying, "So and so was interviewed. Psychologic testing done," and she gives her determination: "This active duty member is sane or is not sane."
>
> TC Do you actually review any of the tests or anything like that?
>
> MEM (Col David): No.

---

**1.** *See* 41 MJ 213, 229 n. * (1994).

**2.** *See United States v. McElroy*, 40 MJ 368, 370–71 (CMA 1994)-Part I.

In a capsule, she explained that her review included only "a summary of the psychologist."

The *voir dire* of Colonel David culminated with this exchange between her and the military judge:

MJ Colonel, in reviewing these, and in this instance, you don't recall whether or not there was or was not a report done on Sergeant Dinatale?

MEM (Col David): I don't recall, sir.

MJ If in some form or fashion, medical evidence or psychological evidence was presented on findings or sentence, do you feel that that would cause you to be unable to decide the facts in this case?

MEM (Col David): No, sir.

MJ So you would be able to make your decision based on the evidence presented in court and the instructions that I'll give you?

MEM (Col David): Yes, sir.

After Colonel David had retired from the courtroom, defense counsel stated:

Sir, the defense would challenge for cause, Colonel David, for the fact that there has been a sanity inquiry in this case and she has reviewed it. I obviously know that she does not recall that. The defense's fear is as the trial goes on and some more evidence is presented, that that may trigger something and on the ... I guess for the sake of guarding against that happening and how she reacts to the information or how she reacts to her recollection of it, we would ask that she be challenged for cause.

Denying the challenge, the military judge explained:

Well, in this case, the review by Colonel David is obviously an administrative one. There is no issue of sanity being raised before the members on the findings. I'm not certain whether or not the defense intends to present matters during the sentencing portion, but the colonel's responses were she has no recollection of any matters involving the accused and would be able to make her determination based solely on the evidence presented by counsel and the instructions and, if there is any evidence presented by the defense on sentencing.

It would not be anything that would be influenced by her administrative review, if there was that in this case. There is no indication that there was. And I don't see that that administrative review would have covered anything that would not be presented as evidence; therefore, I don't see that there's anything that would prevent her from making an impartial decision in this case and the challenge for cause is denied.

Thereupon, defense counsel peremptorily challenged another member of the panel and thereby preserved for appellate review Colonel David's suitability as a member of this panel. *See* RCM 912(f)(4).

## II

■ In part from recognition that each party has only one peremptory challenge in a court-martial, *see* RCM 912(g)(1), this Court frequently has reiterated the President's articulated policy that military judges should grant challenges for cause liberally. *See, e.g., United States v. Hamilton,* 41 MJ 22, 25 (CMA 1994); *United States v. Glenn,* 25 MJ 278, 279 (CMA 1987). This policy was stated expressly in early versions of the Manual for Courts–Martial. *See* para. 62*h* (2), Manual for Courts–Martial, United States, 1969 (Revised edition); para. 62*h* (2), Manual for Courts–Martial, United States, 1951. It has been continued implicitly through more recent versions, *see* Drafters' Analysis, Manual for Courts–Martial, United States (1995 ed.), at A21–59; Drafters' Analysis, Manual for Courts–Martial, United States, 1984, at A21–54; *United States v. Smart,* 21 MJ 15, 18–19 and n. 1 (CMA 1985).

■ Our standard of review of a military judge's denial of a causal challenge is clear abuse of discretion. *United States v. Hamilton, supra* at 25; *United States v. White,* 36 MJ 284, 287 (CMA 1993); *see* S. Childress & M. Davis, *Federal Standards of Review* § 4.09 at 4–70 (2d ed. 1992). Commenting on the relationship between this appellate standard of review and a military judge's liberal-grant charge, this Court has said:

This means that military judges must follow the liberal-grant mandate in ruling on challenges for cause, but we will not overturn the military judge's determination not to grant a challenge except for a clear abuse of discretion in applying the liberal-grant mandate.

36 MJ at 287. Accordingly, we proceed to consider whether the military judge here clearly abused his discretion, in light of the liberal-grant mandate, when he denied the defense challenge of Colonel David.

■ As appellant points out in this Court, a military judge should grant a challenge for cause whenever it appears that the object of the challenge "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." RCM 912(f)(1)(N). "The test is whether the member's personal bias is such that it will not yield to the evidence presented and the judge's instructions[,]" *United States v. Reynolds*, 23 MJ 292, 294 (CMA 1987)— keeping in mind that the "catch-all ground" for causal challenge found in RCM 912(f)(1)(N), Manual, *supra* (1995 ed.), "reflects the President's concern with avoiding even the perception of bias, predisposition, or partiality in courts-martial panels[,]" *United States v. Lake*, 36 MJ 317, 323 (CMA 1993). "The burden of maintaining the challenge belongs to the challenging party. RCM 912(f)(3)." *United States v. Hamilton, supra* at 25.

This record contains no basis whatever upon which to conclude that Colonel David possessed actual bias against appellant. She firmly asserted, with no claim of contradiction, that she had no recollection at all of appellant's name or of his particular sanity board report crossing her desk—an assertion that seems entirely logical in light of her testimony as to the limited scope of her review of such reports. Even defense counsel seemed to acknowledge lack of actual bias when, in the course of rationalizing his challenge, he urged that "[t]he defense's fear is as the trial goes on and some more evidence is presented, that that may trigger something. . . . " Thus, he urged that the challenge be granted "for the sake of guarding against that happening. . . . "

■ While an abundance of caution might logically support this argument, a military judge does not clearly abuse his discretion as a legal matter merely because he is not overly cautious. Here, the record demonstrates that Colonel David had no actual bias at the time of the challenge, and there is no suggestion elsewhere in the record that any such bias may have arisen in her while hearing the evidence, as the defense had speculated might happen. Accordingly, there was every reason for the military judge to give credence to her assurances that she "would be able to make [her] decision based on the evidence presented in court and the instructions that" the judge would give to her. *Cf. United States v. Smart, supra* at 19 (judge should not "accept as conclusive a challenged member's perfunctory disclaimer of personal interest or his assertion of impartiality"); *United States v. Nigro*, 28 MJ 415, 418 (CMA 1989)("member's unequivocal statement of a lack of bias can ... carry weight").

■ We are equally sure that the record does not reflect any implied bias attributable to Colonel David. Objectively viewed—as is the standard when examining for implied bias, *see United States v. White*, 36 MJ at 288 (Sullivan, C.J., concurring) and cases cited therein—no reasonable person could surmise that Colonel David had any awareness of appellant at all, outside the courtroom, much less that it would "not yield to the evidence presented and the judge's instructions." *See United States v. Reynolds*, 23 MJ at 294. Moreover, even if some subsequent item of evidence were to have "trigger[ed] something" in Colonel David's mind, the cursory administrative review that she gave to sanity board reports does not amount to any more than "insubstantial participation," which would not support a challenge against her. *See United States v. Lake*, 36 MJ at 324, and cases cited therein. In any event, any potential for even implied bias was minimal, in light of the absence of any issue involving appellant's mental state.

Accordingly, we hold that the military judge did not clearly abuse his discretion,

even in light of the liberal-grant mandate, when he ruled that appellant had not carried his burden to show that Colonel David should be removed from the panel "in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." *See* RCM 912(f)(1)(N).

### III

The decision of the United States Air Force Court of Military Review is affirmed.

Judges SULLIVAN, CRAWFORD, and GIERKE concur.

COX, Chief Judge (concurring):

I write only to question if there is such a thing as "implied bias." A court member is either "qualified" or "disqualified." We have never held that bias may be "implied" or, more accurately, inferred from proof of a court member's status. *See United States v. White*, 36 MJ 284 (CMA 1993); *see also* RCM 912, Manual for Courts–Martial, United States (1995 ed.); *United States v. Jefferson*, 44 MJ 312 (1996).