UNITED STATES, Appellee

v.

Mark L. MINYARD, Airman, U.S.
Air Force, Appellant.

No. 96–0901.
Crim.App. No. 31461

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 9, 1997.

Decided June 24, 1997.

**230**

For Appellant: *Captain W. Craig Mullen* (argued); *Colonel David W. Madsen* (on brief); *Colonel Jay L. Cohen* and *Lieutenant Colonel Kim L. Sheffield.*

For Appellee: *Captain Mitchel Neurock* (argued); *Colonel Theodore J. Fink, Lieutenant Colonel Michael J. Breslin,* and *Captain Deborah M. Carr* (on brief); *Lieutenant Colonel Robert E. Williams, Jr.* (USAFR).

Tried at Travis Air Force Base, California.

*Opinion of the Court*

GIERKE, Judge:

A general court-martial composed of officer members convicted appellant, contrary to his pleas, of stealing U.S. currency of a value greater than $100.00 (7 specifications) and wrongfully appropriating an American Express card, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. The adjudged and approved sentence provides for a bad-conduct discharge, confinement for 60 days, partial forfeitures for 2 months, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

We granted review of the following issue:[1]

WHETHER THE MILITARY JUDGE ERRED TO THE PREJUDICE OF APPELLANT BY DENYING THE CHALLENGES FOR CAUSE.

Two challenges for cause are at issue in this case. The first involved a defense challenge of a lieutenant colonel who had previously served as a judge advocate and area defense counsel. The second, on which we turn our decision, involved Major (Maj) B, the wife of Office of Special Investigations Special Agent B, one of the agents responsible for investigating the crimes for which appellant was tried.

During *voir dire,* Maj B stated that she and her husband "don't discuss cases." She initially said that she had not heard her husband "make any references at all to this case." When asked, however, if she had "heard him make any references at all that could be applied to this case," she answered, "Yes." Asked to elaborate, she testified:

> It was a conversation on the telephone but I don't know who he was talking to because I didn't answer the telephone when we were at home. He made a comment like, "More money?" So when he got off the phone I said, "What are you talking about, 'more money'?" I didn't know who he was talking to. He said, "Oh, it is a case that is being worked on. Somebody said that this guy took more money." That would be something that I might associate with this case.

Defense counsel challenged Maj B for cause on the ground that she "is the wife of one of the case agents or the assistant case agent.... In this case, if for no other reason, we would think that the appearance aspect of this: the agent whose name is throughout this case file." Defense counsel argued that Maj B should not sit on the court panel in order to keep the court-martial "free from substantial doubt as to reality [sic], fairness and impartiality." Trial counsel did not dispute Special Agent B's role in the investigation of this case, but informed the military judge that the prosecution "does not anticipate Agent [B]'s name coming up even once in this case." The military judge denied the challenge, remarking that Maj B's "answers were significantly direct, sincere, and that they reflected that she keeps apart their two particular professional careers; that she knows nothing about this particular case; [and] that she has not formed any opinion whatsoever in this particular case." The military judge also ruled, "I don't see a challenge for cause for ... [Maj B] based on the

---

1. We also granted review of the issue "[w]hether the military judge erred to the prejudice of appellant by instructing the members that a mistake of fact must be both honest and reasonable to be a defense to the specific-intent crimes of larceny and wrongful appropriation." In light of our decision on the challenges for cause, we do not decide this issue.

fact that she is the spouse of that particular agent."

The record before us is unambiguous. Contrary to the assertion of our dissenting colleague that "there is no evidence in the record that ... [Special Agent B] was involved with appellant's case," 46 MJ at 235, counsel for both sides agreed, on the record, that Special Agent B was an assistant case agent in the investigation of the charges before the court-martial.

RCM 912(f)(1)(N), Manual for Courts–Martial, United States (1995 ed.), codifies a general ground for challenge applicable when a member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." We have said that "[t]his general ground includes actual bias as well as 'implied bias.' " *United States v. Daulton,* 45 MJ 212, 217 (1996), citing *United States v. Harris,* 13 MJ 288, 292 (CMA 1982). "The focus of the rule is on the perception or appearance of fairness." *United States v. Dale,* 42 MJ 384, 386 (1995). The rule "reflects the President's concern with avoiding even the perception of bias, predisposition, or partiality." *United States v. Lake,* 36 MJ 317, 323 (CMA 1993).

The issue in this case involves implied bias rather than actual bias. Although our standard of review is abuse of discretion for challenges based on actual bias as well as those based on implied bias, we give less deference to the military judge when implied bias is involved. *See generally United States v. White,* 36 MJ 284 (1993).

"A challenge for cause based on actual bias is 'essentially one of credibility.' " Because of the military judge's superior "opportunity to observe the demeanor of court members and assess their credibility during *voir dire,*" a military judge's ruling on a challenge based on actual bias is given "great deference." *Daulton,* 45 MJ at 217. "Implied bias," on the other hand, "is reviewed under an objective standard.... Implied bias is not viewed through the eyes of the military judge or the court members, but through the eyes of the public." *Id.* at 217. "[T]he military judge's assessment of ...

credibility ... is not dispositive on the issue of implied bias." *Id.* at 218.

We hold that the military judge abused his discretion in denying the challenge of Maj B. Under an objective standard, there is a "substantial doubt" about the "legality, fairness, and impartiality" of a court-martial when a court member sits in judgment of a case investigated by her husband. Like the participation of the security police officer in *Dale* and the participation of the member whose sister and mother were victims of sexual abuse in *Daulton,* Maj B's participation in a case investigated by her husband does not pass the test of public confidence contemplated by RCM 912(f)(1)(N). *See* RCM 912(f), Discussion (example of basis for challenge is that "the member ... is closely related to ... a witness in the case"); *see also United States v. Glenn,* 25 MJ 278, 280 (CMA 1987) ("We find it difficult to believe that either appellant or the public could be convinced that he received a fair trial when he was not apprised of the fact that a member of the staff judge advocate's family was sitting on his court-martial.").

Contrary to our dissenting colleague's assertions, this decision is not a reflection on Maj B's integrity, "a rejection of rehabilitation of potential court members," 46 MJ at 232, or a holding that law enforcement personnel and their spouses are *per se* ineligible to sit as court members. We do not suggest that Maj B's responses on *voir dire* were anything but completely honest and sincere. We are not holding that law enforcement personnel and their spouses are *per se* disqualified from sitting on courts-martial.

This case is not based on Maj B's relationship with a person who happens to be in law enforcement. It is based on her relationship to a criminal investigator who investigated the charges in the specific case before her. We hold only that Maj B's participation in a case investigated by her husband would cause a reasonable member of the public to have "substantial doubt as to legality, fair-

ness, and impartiality" of the proceedings. RCM 912(f)(1)(N).

The decision of the United States Air Force Court of Criminal Appeals is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

Judges SULLIVAN and EFFRON concur.

COX, Chief Judge (concurring):

I write only because of the doomful, apocalyptic dissent of my learned colleague. This case is simple. The wife of a policeman who investigated the case was allowed to sit in judgment of the man her husband accused of committing the crime. I would allow neither the fox nor the vixen to guard the hen house.

With all due respect, we are not talking abstractly about a policeman or a policeman's wife. We are talking about "the" policeman and "his" wife. *See* RCM 912(f)(1)(N), Manual for Courts–Martial, United States (1995 ed.).

CRAWFORD, Judge (dissenting):

Despite their assertion to the contrary, the majority's decision is either a reflection on the integrity of the court member or a rejection of rehabilitation of potential court members. Neither is appropriate. Additionally, it misapplies our "clear-abuse-of-discretion" standard of review, *United States v. White*, 36 MJ 284, 287 (CMA 1993). For these reasons I dissent.

FACTS

This case is similar to others we have seen. *See, e.g., United States v. Roane*, 43 MJ 93 (1995) (accused used roommate's telephone jack); *United States v. Reed*, 34 MJ 282 (CMA 1992) (accused used roommate's ATM card). The issue is whether appellant had permission to use his friend's American Express card for charges totaling nearly $5,000. No law enforcement officers testified in this case either at trial or at the investigation under Article 32, Uniform Code of Military Justice, 10 USC § 832. Appellant's friend, Airman First Class John R. DiRoma, Jr.,

testified, along with an auditor from American Express, for the Government. The only witness for the defense was appellant. The issue centered around appellant's belief that he could lawfully take and use his friend's ATM card.

The court members were placed under oath for the *voir dire*. During the *voir dire* of the court members, it was learned that Lieutenant Colonel (LtCol) B was previously an area defense counsel, while Major (Maj) B was married to an OSI agent.

Maj B testified on *voir dire* as follows:

TC: Thank you. Major [B], I just want to ask you a couple of questions about your association with OSI. I understand your husband is an agent for them, and it was also my understanding that he was involved in some way on this particular case. Are you aware of that?

MEMB MAJ [B]: No. I had no idea. We don't discuss cases. If he ever gave me any information at all—if he ever did—I would want to know more. So, I just don't want to know. We don't discuss any cases.

TC: Have you heard him make any references at all to this case?

MEMB MAJ [B]: No.

TC: Let me ask you an even more specific question. Have you heard him make any references at all that could be applied to this case?

MEMB MAJ [B]: Yes.

TC: If I could ask, what references would those be?

MEMB MAJ [B]: It was a conversation on the telephone but I don't know who he was talking to because I didn't answer the telephone when we were at home. He made a comment like, "More money?" So when he got off the phone I said, "What are you talking about, 'more money'? I didn't know who he was talking to. He said, "Oh, it is a case that is being worked on. Somebody said that this guy took more money." That would be something that I might associate with this case.

TC: Did he say anything about that case?

MEMB MAJ [B]: No.

TC: So you have a standing rule in your house not to discuss cases?

MEMB MAJ [B]: Yes.

TC: Just one last general thing. Is there anything about your marriage to your husband or in your relationship to your husband that would cause you to have any problems in sitting in a court-martial?

MEMB MAJ [B]: No. I mean since he has worked in OSI, it has always been his work and mine has been mine. I don't really get involved with what he does.

The judge later questioned Maj B, as follows:

MJ: Just to clarify for the record, you had no association with this case based on your relationship with your husband?

MEMB MAJ [B]: Absolutely not.

MJ: Or his professional association with OSI?

MEMB MAJ [B]: No, sir.

MJ: And you heard none of the details of this particular case?

MEMB MAJ [B]: No, sir.

MJ: And you have not formed any opinions in regards to the charge and specifications in this case based on your husband's professional occupation with the Air Force?

MEMB MAJ [B]: No.

Both members articulated their ability to remain impartial, listen to the evidence, and follow the judge's instructions. There was no questioning of Maj B as to the other witnesses in the case.

During argument on the challenge for cause against Maj B, defense counsel stated:

Despite her protestations that they do not discuss things, I find that highly unusual. That would be a unique case in which one's profession did not bleed over into their personal lives, and that there were no theoretical discussions as to the value or the procedures or processes of people they deal with in their jobs. In this case, if for no other reason, we would think that the appearance aspect of this: the agent whose name is throughout this case file.

The defense did not call her husband in rebuttal of her testimony.

The prosecutor argued the following:

The United States does not anticipate Agent [B]'s name coming up even once in this case. Certainly, we have no plans for bringing it up and we are not aware of any reason that it would come up as he was the assistant case agent and merely derived for some support for the main case agent. The Defense Counsel's concern is based solely on the fact that she happens to be married to that individual. As she stated, there has been no bleedover and it wouldn't affect her at all.

The judge found that Maj B's "answers were significantly direct, sincere, and that they reflected that she keeps apart their two particular professional careers; that she knows nothing about this particular case; that she has not formed any opinion whatsoever in this particular case; and in regards to her particular answers, she has nothing to state as an effect, either for her or for her husband in regards to her particular participation in this case or the results of this particular case."

Subsequently, both challenges for cause against these two members were denied, and the defense used the peremptory challenge against LtCol B.

In seeking to preserve the challenge for cause, the defense stated that "but for the denial of the challenge for cause as to Major [B], we would have challenged yet another member."

## DISCUSSION

Our standard of review is whether the judge clearly abused his discretion. *White*, 36 MJ at 287. This Court does not appear to distinguish between different "abuse of discretion" standards depending on the alleged errors. In *United States v. Travers*, 25 MJ 61, 63 (CMA 1987), quoting *Renney v. Dobbs House, Inc.*, 275 S.C. 562, 274 S.E.2d 290, 291 (1981), the Court notes that "[a]n abuse of discretion arises in cases in which the judge was controlled by some error of law or where the order, based upon factual, as distinguished from legal, conclusions, is without

evidentiary support." *Travers* applies a stringent abuse-of-discretion standard: "To reverse for 'an abuse of discretion involves far more than a difference in ... opinion.... The challenged action must ... be found to be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous' in order to be invalidated on appeal.'" 25 MJ at 62, quoting *United States v. Yoakum*, 8 MJ 763, 768 (ACMR 1980), *aff'd on other grounds*, 9 MJ 417 (CMA 1980); *see also Haney v. Rose*, 642 F.2d 1055, 1060 (6th Cir.1981)("[A] trial judge's finding of impartiality should be set aside only upon a showing that prejudice is manifest.").

This Court has stressed the Sixth Amendment right to "an impartial jury." *Voir dire* is the method to weed out members who may be biased. The Manual sets forth specific grounds for challenges for cause plus the catchall mentioned by the majority. RCM 912(f)(1), Manual for Courts–Martial, United States (1995 ed.). Neither the Manual nor 28 USC § 1870 prohibits police officers from sitting as jurors. "Bias and prejudice will not be presumed from the fact that a juror is engaged in law enforcement work." *United States v. LePera*, 443 F.2d 810, 812 (9th Cir.1971) (citation omitted).

The question of "partiality" of a court member is "plainly one of historical fact: did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Patton v. Yount*, 467 U.S. 1025, 1036, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984). Consequently, "the trial court's resolution of such questions is entitled, even on direct appeal, to 'special deference.'" *Id.* at 1038, 104 S.Ct. at 2892. This "determination is essentially one of credibility, and therefore largely one of demeanor" that should be determined by the trial judge. *Id.* Judges are in the best position to evaluate both the verbal and non-verbal communication, including the raised eyebrow, the hesitancy, and movement as to whether the court member is being honest during *voir dire*. The judge in this case recognized that he had to make the credibility decision.

Initial questioning of a court member may establish a ground for challenge for cause, *see, e.g., Patton, supra* at 1038, 104 S.Ct. at 2892–93; such as views on the death penalty, *see, e.g., Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); pretrial publicity, *United States v. Curtis*, 44 MJ 106, 138–140 (1996), *rev'd as to sentence on recon.*, 46 MJ 129 (1997); or inflexibility on sentence in a case, *United States v. Heriot*, 21 MJ 11, 13 (CMA 1985)("judge may wish to give the member additional instructions and ask him some clarifying questions"). These initial responses usually lead to rehabilitation.

The majority's decision undermines the practice of rehabilitation in Federal, state, and military courts. When the juror indicates that he or she will follow the judge's instructions, keep an open mind, and weigh all the evidence, absent disbelief by the judge, the member is "mentally free to render an impartial finding and sentence based on the law and the evidence." *United States v. Parker*, 6 USCMA 274, 284–85, 19 CMR 400, 410–11, (1955); *see also United States v. Tippit*, 9 MJ 106 (CMA 1980); *United States v. McGowan*, 7 MJ 205 (CMA 1979); *United States v. Findlay*, 7 MJ 931 (ACMR 1979).

The fact that the court member's husband was involved with investigating a crime against a person's property does not disqualify the member, just as "a mere distaste for a crime does not disqualify a member." *United States v. Karnes*, 1 MJ 92, 94 (CMA 1975).

The Supreme Court has not disqualified a juror based on implied bias. *See, e.g., Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982); *Dennis v. United States*, 339 U.S. 162, 172–73, 70 S.Ct. 519, 524, 94 L.Ed. 734 (1950) (Reed, J., concurring) ("implied bias" may be applied in appropriate circumstances); *United States v. Wood*, 299 U.S. 123, 57 S.Ct. 177, 81 L.Ed. 78 (1936). *Cf. Gonzales v. Thomas*, 99 F.3d 978 (10th Cir.1996)(court did not find actual or implied bias because the juror's answers were honest and the juror's date rape was unlike the charged rape offense); *Burton v. Johnson*, 948 F.2d 1150 (10th Cir.1991)(found implied bias). Justice O'Connor wrote separately in *Phillips* to state that "implied bias" might be

applied "in appropriate circumstances." 455 U.S. at 221, 102 S.Ct. at 948. She stated:

> Some examples might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.

*Id.* at 222, 102 S.Ct. at 948–49.

The Court of Appeals for the Seventh Circuit in *Hunley v. Godinez,* 975 F.2d 316, 319, 320 (1992), stated that presumed bias or implied bias should be reserved for "extreme" or "rare" circumstances. This is not that case.

The prosecutor asked Maj B if she knew that her husband was involved with this case. She said that she was unaware of any involvement. Indeed, there is no evidence in the record that he was involved with appellant's case. The majority points only to the argument of counsel, but that is not evidence. As the Supreme Court has noted:

> It [the challenge to the array] consists exclusively of counsel's statements, unsworn and unsupported by any proof or offer of proof. The Government did not explicitly deny those statements. But it was under no necessity to do so. The burden was upon the petitioner as moving party "to introduce, or to offer, distinct evidence in support of the motion."
>
> Of itself this failure in tender of proof would require denial of the motion....

*Frazier v. United States,* 335 U.S. 497, 503, 69 S.Ct. 201, 205, 93 L.Ed. 187 (1948) (citations omitted); *see Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). There is neither a proffer nor evidence in this case. It may be that Maj B's husband is the evidence custodian or would sign off in a perfunctory way on all investigations. *See United States v. Dinatale,* 44 MJ 325 (1996)(denied challenge for cause against the President of the court-martial who had signed off on the report of Dinatale's mental responsibility board).

In any event, upon being questioned, Maj B said that she would remain impartial, listen to the evidence, and follow the judge's instructions. Additionally, she stated that she had formed no opinion in this case. Defense counsel did not ask for a session under Article 39(a), UCMJ, 10 USC § 839(a), to call the member's husband to explore his involvement with the case. Now, the majority assumes the worst, even though there is not the slightest appearance of unfairness based on the facts presented. *Cf. United States v. Dinatale, supra.*

As I warned in *United States v. Dale,* 42 MJ 384, 386–88 (1995), the Court seems to be establishing a *per se* rule against law enforcement personnel sitting as court members. Now a majority has extended that rule to spouses of law enforcement agents. Where goest thou? As Chief Judge Everett echoed in *United States v. Stuckey,* 10 MJ 347, 359 (CMA 1981), quoted in *United States v. Lopez,* 35 MJ 35, 44 (CMA 1992) (Cox, J., concurring with modest reservations), "[a] military commander has responsibilities for investigation and for law enforcement that a magistrate does not possess." This same thought was echoed in *Lopez* by then-Judge Cox, observing that a commander cannot be detached and neutral because of this role. *Id.* at 45. If we complete the majority's circle of reasoning, it only follows that any connection with law enforcement will disqualify a servicemember, maybe even a commander, from serving as a court member.

The majority formulates a new standard to be applied retroactively. The opinion does not set forth a single standard to be applied in cases concerning challenges for cause. Maybe this issue is not susceptible to a single standard and we should have multiple standards. If that is the case, what other standards will we adopt in the future? This issue will continue to bedevil us. However, the issue could be avoided if trial judges would liberally grant challenges for cause. But they should not be required to grant them based on arguments versus evidence in a case.