UNITED STATES, Appellee

v.

Kenneth L. LAVENDER, Airman
U.S. Air Force, Appellant.

No. 96–1233.
Crim.App. No. 31602.

U.S. Court of Appeals for
the Armed Forces.

Argued March 12, 1997.

Decided Aug. 26, 1997.

For Appellant: *Captain W. Craig Mullen* (argued); *Colonel David W. Madsen* (on brief); *Lieutenant Colonel Kim L. Sheffield* and *Major Kevin P. Koehler.*

For Appellee: *Captain Libby A. Brown* (argued); *Colonel Theodore J. Fink* and *Major LeEllen Coacher* (on brief); *Lieutenant Colonel Michael J. Breslin.*

*Opinion of the Court*

GIERKE, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, pursuant to his pleas, of larceny (2 specifications), forgery, making and uttering bad checks (2 specifications), and wrongfully charging personal telephone calls to the Government, in violation of Articles 121, 123, 123a, and 134, Uniform Code of Military Justice, 10 USC §§ 921, 923, 923a, and 934, respectively. He pleaded not guilty to one other specification of forgery and to wrongfully endeavoring to influence the testimony of a potential witness in a nonjudicial punishment proceeding, and was acquitted of both. He pleaded not guilty to two other specifications of larceny but, as to each, was found guilty of the lesser-included offense of wrongful appropriation, in violation of Article 121.*

Appellant's adjudged and approved sentence provides for a bad-conduct discharge, confinement and partial forfeiture of pay for 24 months, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

Our Court granted review of the following issues:

I

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY DENYING APPELLANT'S CHALLENGE FOR CAUSE AGAINST THE ENTIRE COURT-MARTIAL PANEL AFTER IT WAS DISCOVERED THAT TWO OF THE MEMBERS HAD MONEY STOLEN FROM THEIR PURSES IN THE JURY DELIBERATION ROOM.

II

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY FAILING TO *SUA SPONTE* DECLARE A MISTRIAL ONCE IT WAS DISCOVERED THAT TWO OF THE COURT MEMBERS HAD MONEY STOLEN FROM THEIR PURSES IN THE JURY DELIBERATION ROOM.

With respect to Issue I, we hold that the military judge did not abuse his discretion by denying the challenges for cause. With respect to Issue II, we hold that the military judge had no duty to declare a mistrial, since the challenges were properly denied.

The panel convened to hear appellant's case was composed of six officer and six enlisted members. After challenges, the panel was reduced to three officer and five enlisted members.

After both sides rested and deliberations on findings began, Major (Maj) P, a panel member, discovered that $20.00 had been stolen from her purse. She informed the president of the panel in the presence of all the panel members. She then informed the military judge.

The military judge convened an Article 39(a), UCMJ, 10 USC § 839(a), session to question the panel members individually about the impact of the larceny. The military judge asked Maj P, "[H]as this particular incident today affected you in any way in which you might think would affect your impartiality in this particular proceeding?" She responded, "No, sir. I just feel kind of—I should have been more careful leaving my purse unattended. That is the only thing." Trial counsel asked Maj P if she would "be able to discount what has happened to you today in deriving [sic] at what would be a fair and just sentence for the accused." She responded, "I can." Defense

---

* We heard oral argument in this case at the United States Air Force Academy, Colorado Springs, Colorado, on March 12, 1997, as part of "Project Outreach." *See United States v. Allen*, 34 MJ 228, 229 n. 1 (CMA 1992). At the close of the hearing, Chief Judge Cox, speaking on behalf of the Court, recognized the distinguished 38-year Air Force career of Colonel Richard Lee, who had served at the Air Force Academy for 21 years, the last 9 of which as the head of the Law Department. Colonel Lee was retired from the Air Force as a Brigadier General on March 31, 1997.

counsel declined to question Maj P. Maj P volunteered that Captain (Capt) S also believed that some money had been taken from her wallet.

Lieutenant Colonel (LtCol) P, the panel president, was questioned and said that the incident would not affect his ability to continue sitting as a member. He was concerned, however, that "there may be an emotional tone that could [a]ffect at least one of those jurors." He identified that member as Capt S. Defense counsel declined to question LtCol P.

Capt S, the second larceny victim on the panel, was asked by the military judge, "[H]ow has this affected you?" She responded, "It has no effect whatsoever, as far as the proceedings go." The military judge asked how she felt, and she said she was "disappointed" that someone in the headquarters building would "go through" the personal effects of Maj P and herself.

Trial counsel asked Capt S if she would "be able to disregard your own feelings about the person who took your money, when you are thinking about Airman Lavender." She responded, "Absolutely." Defense counsel declined to question Capt S.

All five enlisted members were asked similar questions by the military judge and trial counsel and gave similar responses. Defense counsel asked three enlisted members if Maj P and Capt S mentioned when the money was taken. Two responded that they did not, while one stated she "heard that it was during the morning break, before lunch." At defense request, Capt S was recalled for further *voir dire*, and defense counsel asked her if she knew when the money was taken. She responded that it could have been taken at any time between 8:00 a.m. and 11:50 a.m.

Defense counsel then challenged the entire panel. Defense counsel argued that the larcenies affected the entire panel, and he expressed concern that once the members found out during the sentencing hearing that appellant had pleaded guilty to larceny and related offenses, the members would think that appellant had stolen the panel members' money. Trial counsel opposed the challenge to the entire panel but joined in the challenge of Maj P and Capt S. The military judge granted the challenge of Maj P and Capt S but denied the challenge of the remaining members.

The remaining members, LtCol P and the five enlisted members, resumed deliberations. They found appellant not guilty of wrongfully endeavoring to influence the testimony of a potential witness and of the contested forgery; and not guilty of the two contested larcenies but guilty of the lesser-included offenses of wrongful appropriation.

The primary evidence of the alleged forgery and larcenies was the testimony of the victim, Ms. W. She testified that while appellant was living at her parents' house, he took a check from her checkbook, wrote it for $80.00, and cashed it. She learned about appellant's acts when the bank asked her if she knew about a check that had been used out of numerical sequence. She confronted appellant, and he admitted taking, writing, and cashing the check. He promised to repay the money and did so on the day after Ms. W confronted him. On cross-examination Ms. W admitted that she had given appellant permission to sign her name to checks "on a couple of other occasions" and had given him a Texaco credit card with her name on it.

■ Appellant asserts that the military judge erred by denying the challenge of the entire panel. He argues that the remaining court members were also victims, because the thefts violated the sanctity of the deliberation room.

■ RCM 912(f)(1)(N), Manual for Courts-Martial, United States (1995 ed.), provides that a court member "shall be excused for cause whenever it appears that the member ... [s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." This rule includes challenges based on actual bias as well as implied bias. *United States v. Napoleon*, 46 MJ 279, 283 (1997); *United States v. Minyard*, 46 MJ 229, 231 (1997), citing *United States v. Daulton*, 45 MJ 212 (1996); and

*United States v. Harris,* 13 MJ 288, 292 (CMA 1982). RCM 912(f)(3) provides that "[t]he burden of establishing that grounds for a challenge exist is upon the party making the challenge."

■ We review rulings on challenges for cause for abuse of discretion. On questions of actual bias, we give the military judge "great deference because we recognize that he has observed the demeanor of the participants in the *voir dire* and challenge process." *United States v. Napoleon, supra,* quoting *United States v. White,* 36 MJ 284, 287 (CMA 1993).

■ We are less deferential on questions of implied bias. Implied bias is reviewed through the eyes of the public. *Napoleon, supra,* citing *Daulton,* 45 MJ at 217. The focus "is on the perception or appearance of fairness of the military justice system." *United States v. Dale,* 42 MJ 384, 386 (1995).

Appellant urges this Court to consider *Hunley v. Godinez,* 784 F.Supp. 522 (N.D.Ill.), *aff'd,* 975 F.2d 316 (7th Cir.1992), as supporting his assertion that the entire panel should have been challenged for implied bias. In *Hunley* the defendant was tried for burglary and murder. He had made an unforced entry into an apartment looking for small items to steal. When he was surprised by the occupant, he killed her with a kitchen knife and fled.

While Hunley's jury was sequestered in a hotel overnight, four jurors in two adjacent rooms were burglarized in a manner similar to Hunley's burglary. The burglar made an unforced entry into each room with a pass key and stole money and other small items. All 12 jurors discussed the burglaries among themselves. Within an hour after deliberations resumed the next day, four holdout jurors changed their votes from "not guilty" to "guilty." Defense counsel's request for a mistrial was denied. Hunley was convicted and sentenced to confinement for 40 years. 784 F.Supp. at 523–24.

Hunley filed a habeas corpus petition under 28 USC § 2254, contending *inter alia* that he was denied his right to due process and trial by an impartial jury. The United States District Court granted the petition. 784 F.Supp. at 533. The State of Illinois appealed, and the Seventh Circuit affirmed. 975 F.2d 316.

Although appellant argues that *Hunley* supports his case, we conclude that the principles of law set out by the Seventh Circuit in *Hunley* and the factual differences between appellant's case and *Hunley* warrant a different result.

*Hunley* recognized that use of implied bias to overturn a conviction "is certainly the rare exception." Quoting *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 945, 71 L.Ed.2d 78 (1982), the court observed "that due process does not require a new trial every time a juror has been placed in a potentially compromising situation." 975 F.2d at 318. The usual redress for jury bias is "a hearing in which the defendant is afforded the chance to prove actual bias." *Id.* Although *Hunley* found implied bias, that decision concludes by stating that the "holding is limited to the very unique facts stated herein" and that "the 'implied bias' test should rarely apply." *Id.* at 320; *accord Tinsley v. Borg,* 895 F.2d 520, 527 (9th Cir.1990), quoting *Smith,* 455 U.S. at 222, 223 n. *, 102 S.Ct. at 948, 949 n. * (O'Connor, J., concurring) (implied-bias doctrine should be applied only in "extreme" or "extraordinary" cases).

■ In this case defense counsel was afforded a hearing but chose not to question the panel members about the impact of the larcenies. Instead, he limited his examination to determining when the larcenies were discovered. As a general proposition, defense counsel may not decline to inquire into potentially prejudicial information and then claim on appeal that the information was prejudicial. *See United States v. Simonds,* 15 USCMA 641, 643–44, 36 CMR 139, 141–42 (1966) (defense counsel did not request inquiry into prejudicial information given to court members "in some unknown manner" but contended on appeal that the information was prejudicial).

We note several significant factual differences between appellant's case and *Hunley.* First, unlike *Hunley,* this was not a case where the court members stood "in the shoes

of the victim." 975 F.2d at 319. The larcenies from the two court members occurred under circumstances significantly different from the larcenies involved in this case. Appellant was charged with taking and forging a check from the checkbook of a woman with whose family he was living. The woman confronted him; he admitted taking and cashing the check; and he gave her the money back.

Second, the nature of the crimes involved in *Hunley* was much more intimidating than the crimes involved in appellant's case. In *Hunley* the defendant was charged with violating a woman's home and then killing her when she unexpectedly confronted the defendant. While the jurors in *Hunley* were deliberating, their temporary home during sequestration was violated under circumstances disturbingly similar to Hunley's crimes. The jurors were understandably concerned that the crimes against them could have resulted in violence, as it did with Hunley's crimes. On the other hand, appellant's trial was for economic crimes: stealing checks, passing bad checks, and forgery. The crimes against the panel members involved a theft of unattended property, not an invasion of the home or the potential for violence.

Third, unlike *Hunley* where the four jurors who were burglarized remained on the jury, the two victims in appellant's case were removed.

Fourth, in *Hunley* the jurors "expressed concern over the incident." 975 F.2d at 317, 320. In appellant's case, there is no evidence that any panel members who remained on the case manifested any concern about the incident. Although LtCol P expressed concern about the impact of the incident on Capt S, Capt S was removed from the panel. Even Maj P, one of the victims who was removed from the panel, blamed herself, telling the military judge that she "should have been more careful leaving my purse unattended." Defense counsel had ample opportunity to explore the impact of the incident on the panel members and declined to do so.

Fifth, unlike *Hunley*, the crimes against the jurors in appellant's case did not appear to affect the verdict. In *Hunley*, the Court

of Appeals found it significant that four hold-out jurors, two of whom were victims, quickly changed their votes and found the defendant guilty. 975 F.2d at 320. In appellant's case, the court members acquitted appellant of attempting to influence the testimony of a witness, forgery, and larceny, and found him guilty only of wrongful appropriation.

Finally, appellant's claim of bias on the part of the court members rings hollow in light of his failure to question the court members about their reaction to the thefts. *See United States v. Simonds, supra.*

We conclude that appellant did not carry his burden at trial of showing that his case is the "rare exception" justifying use of the implied-bias doctrine. Accordingly, we hold that the military judge did not abuse his discretion by denying the challenges for cause.

Regarding Issue II, our decision that the challenge to the entire panel was properly denied removes any manifest necessity to declare a mistrial "in the interest of justice." *See United States v. Brooks*, 42 MJ 484, 487 (1995). Accordingly, there was no abuse of discretion in failing to *sua sponte* declare a mistrial.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX and Judge SULLIVAN concur.

EFFRON, Judge (concurring in part and in the result):

I agree with most of the majority's opinion, including much of its discussion of the opinion in *Hunley v. Godinez*, 784 F.Supp. 522 (N.D.Ill.), *aff'd*, 975 F.2d 316 (7th Cir.1992). I do not agree, however, with the paragraph in the majority opinion that implicitly embraces *Hunley*'s view of implied bias necessarily as a "rare exception" found in "the very unique facts stated [t]herein" and reflecting a test that "should rarely apply." 46 MJ at 488.

Although there are certain similarities between civilian jurors and court-martial panel members, there also are important differences. Members of a court-martial panel are

not randomly selected like civilian jurors, but are personally selected by the command. Art. 25, Uniform Code of Military Justice, 10 USC § 825. In contrast to the multiple peremptory challenges in most civilian jurisdictions, each side has only one peremptory challenge in a court-martial. Art. 41(b) & (c), acme, 10 USC § 841(b) & (c). Furthermore, military judges are required to apply a liberal-grant approach to causal challenges to court-martial panel members. *United States v. Napoleon*, 46 MJ 279, 283 (1997).

In view of these differences, I do not agree that the military justice system should adopt the suggestion in *Hunley* that, in civilian trials, the doctrine of implied bias should be "rarely applied." That concept does not appear to have been endorsed in the past by this Court; it is not suggested in any of our recent cases, such as *United States v. Napoleon, supra, United States v. Minyard*, 46 MJ 229 (1997), and *United States v. Daulton*, 45 MJ 212 (1996); and it is not necessary to the disposition of this case.

Under these circumstances, although I generally concur in the opinion and in the result, I do not concur in the paragraph in question.

CRAWFORD, Judge (concurring in the result):

I agree with the result but would apply a different standard of review in implied-bias cases. *See United States v. Napoleon*, 46 MJ 279, 285 (1997)(Crawford, J., concurring in part and in the result); *United States v. Minyard*, 46 MJ 229, 232 (1997) (Crawford, J., dissenting).