SULLIVAN, Senior Judge
(dissenting):

THE MAJORITY’S HOLDING

The majority effectively holds today that where one officer commands a significant number of the members of a panel, he may not sit as a member of that panel if challenged by the defense. The Congress and *182 the President are the lawmakers for the military justice system, and they have not made such a rule. Based on all the circumstances of this case, I conclude that the military judge did not abuse his discretion when he refused to grant the defense challenge to Colonel (COL) Williams. See United States v. Ai, 49 MJ 1, 5 (1998).
In my view, the majority’s holding in this case creates new law, and it is law which Congress or the President should make, not the judiciary. See U.S. Const. Art. I, § 8, cl. 16; Article 36, UCMJ, 10 USC § 836. Congress could have provided that a member shall be disqualified if he or she is the military commander of a significant number of the members of the panel. See Article 25(d), UCMJ, 10 USC § 825(d) (“No member of an armed force is eligible to serve as a member of a general or special court-martial when he is the accuser or a witness for the prosecution or has acted as investigating officer or as counsel in the same ease.”). Congress has been aware that, for years, commanders have sat on panels with their subordinates. Congress could have prohibited this situation by law but failed to do so. A court should not judicially legislate when Congress, in its wisdom, does not.
With respect to judicial rulemaking (the clone of judicial legislation), the President, acting pursuant to Article 36, UCMJ, could also have provided that a challenge must be granted where a member is a brigade commander of a significant number of the members of a court-martial panel. RCM 912(f)(1), Manual for Courts-Martial, United States (1998 ed.), states:
(f) Challenges and removal for cause.
(1) Grounds. A member shall be excused for cause whenever it appears that the member:
(A) Is not competent to serve as a member under Article 25(a), (b), or (c);
(B) Has not been properly detailed as a member of the court-martial;
(C) Is an accuser as to any offense charged;
(D) Will be a witness in the court-martial;
(E) Has acted as counsel for any party as to any offense charged;
(F) Has been an investigating officer as to any offense charged;
(G) Has acted in the same case as convening authority or as the legal officer or staff judge advocate to the convening authority;
(H) Will act in the same case as reviewing authority or as the legal officer or staff judge advocate to the reviewing authority;
(I) Has forwarded charges in the case with a personal recommendation as to disposition;
(J) Upon a rehearing or new or other trial of the case, was a member of the court-martial which heard the case before;
(K) Is junior to the accused in grade or rank, unless it is established that this could not be avoided;
(L) Is in arrest or confinement;
(M) Has informed [sic] or expressed a definite opinion as to the guilt or innocence of the accused as to any offense charged;
(N) Should not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality.
The President could have made a new rule barring commanders of a significant number of other members of a panel from sitting on a court-martial, but he did not. Like judicial legislation, courts should refrain from judicial rulemaking. See generally United States v. Torres, 128 F.3d 38, 45 n. 8 (2nd Cir.1997) (noting that many states have statutes that set forth conduct or status disqualifying jurors without regard to actual bias).
Congress has provided that a military accused may make challenges for cause, and the military judge is to decide these challenges. Article 41(a)(1), UCMJ, 10 USC § 841(a)(1). The President, pursuant to Article 36, UCMJ, has specifically delineated circumstances where a challenged member shall be excused. As noted above, nowhere is it said that a member shall be excused because he is the military commander of a significant number of the members of the panel. See RCM 912(f)(l)(A)-(N). Congress passed the UCMJ legislation knowing that *183 this law was intended to apply to remote bases and posts, as well as to ships at sea. Congress did not see fit to disqualify commanders from sitting on military juries in these circumstances. Accordingly, I must reject this Court’s attempt to fashion such a rule to the contrary. See generally United States v. Scheffer, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (the President, not the Court of Appeals for the Armed Forces, makes the rules for courts-martial).
To the extent that the majority relies on RCM 912(f)(l)(N) as the legal basis or authority for its holding in this case, I also must disagree. It generally says:
A member shall be excused for cause whenever it appears that the member ... (N) should not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality.
In my view, RCM 912(f)(l)(N) does not contemplate mandatory exclusion rules such as that fashioned by the majority in this case. See United States v. Greer, 223 F.3d 41, 52 (2nd Cir.2000) (defining inferred bias in terms of facts which permit a judge to remove a member in the judge’s discretion). Instead, it calls for discretionary judgement by the trial judge, based on all the circumstances of a particular case. See United States v. Smart, 21 MJ 15, 20 (CMA 1985); see also para. 58e, Manual for Courts-Martial, U.S. Army, 1928 (“appreciable risk of injury to the substantial rights of an accused, which risk will not be avoided by a reading of the record”); see also United States v. Warden, 51 MJ 78, 82 (1999); United States v. Ai, 49 MJ at 5; United States v. Minyard, 46 MJ 229, 231-32 (1997).
My analysis shows that the trial judge did not abuse his discretion in this case. The judge exercised his discretion with no knowledge that this Court would expand the law as the majority does today. When the judge made his ruling that is overturned today by the majority, there was no case law suggesting this holding. Interestingly enough, the majority cites no case law as support for this new extension of the law.

Review for Abuse of Discretion by the Trial Judge

The assigned legal question before us is whether the military judge abused his discretion when he denied the defense’s challenge for cause against COL Williams. Appellant asserts that the judge clearly did, especially in light of the military justice system’s “liberal grant policy” for such challenges,[1] see United States v. Dinatale, 44 MJ 325, 327-28 (1996), and certain facts in this case showing “implied bias.” See United States v. Daulton, 45 MJ 212, 217 (1996). Appellant particularly argues that COL Williams’s role as a brigade commander of a majority of the panel members created an appearance of unfairness as to these proceedings. (R. at 166); see generally United States v. Smart, 21 MJ at 18 (citing catchall challenge provision of RCM 912(f)(1)(N)); see United States v. Dale, 42 MJ 384 (1995); United States v. Minyard, 46 MJ at 229; see also United States v. Torres, 128 F.3d at 47.
Implied bias has been said to exist in military law when, “regardless of an individual member’s disclaimer of bias, ‘most people in the same position would be prejudiced [ie., biased].’ ” United States v. Napolitano, 53 MJ 162, 167 (2000) (quoting United States v. Schlamer, 52 MJ 80, 93 (1999)); cf. United States v. Greer, 223 F.3d at 52-53 (in federal civilian system, challenges must be granted on basis of implied bias if court concludes “an average person in the position of the juror in controversy would be prejudiced”). It calls for a judgment by the military judge on the propriety of a challenged member or members sitting in a case, through the eyes of the public. Implied bias focuses on “the perception or appearance of fairness of the military justice system,” rather than the actual exis *184 tence of bias. United States v. Napoleon, 46 MJ 279, 283 (1997).
Appellant complains that the presence of COL Williams on a panel where so many members were subject to his command supervision created an appearance of its unfairness. Appellant argues “[e]ven with the panel members’ disclaimers, an outside observer would reasonably perceive the court-martial to be unfair when COL Williams, a brigade commander, held such an influential position over a majority of the panel members. See (R. at 146.); [United States v.] Youngblood, 47 MJ [338,] 341 [(1997)]; RCM 912(f)(l)(N). The perception of unfairness,” appellant further argues, “increases exponentially considering the fact that, including himself, COL Williams held a commander, supervisor or rating position over enough panel members (seven of ten) to convict SGT Wiesen. (R. at 136-7, 146.); see RCM 921(c)(2)(B).” Final Brief at 7.
The military judge, however, provided several reasons for his rejection of the defense challenge for cause against COL Williams. First, the judge stated that military case law did not require him to grant such a challenge simply because a challenged member had a military supervisory relationship over another panel member. Second, the judge asserted that such a relationship, even with a majority of the members, would not be a significant factor raising a suspicion of unfairness in a ease where that command’s organizational interests were not directly at issue. Third, the judge noted that the extensive voir dire of all the members of the court-martial panel established no other circumstances suggesting COL Williams should not sit in this case in the interest of the appearance of fairness.
In my view, the military judge did not abuse his discretion in denying the defense challenge for cause for these reasons. See generally United States v. Napolitano, 53 MJ at 167. He correctly recognized that a military supervisory relationship over another member, including writing the subordinate’s fitness report, does not per se disqualify the supervisor from sitting on a court-martial panel with his subordinate. See United States v. Murphy, 26 MJ 454, 455 (CMA 1988). On this matter, we have generally subscribed to Chief Judge Quinn’s view, expressed long ago in United States v. Deain, 5 USCMA 44, 52, 17 CMR 44, 52 (1954):
[T]he mere fact that the senior, or other member of the court, coincidentally has the duty to prepare and submit a fitness report on a junior member, in and of itself, does not affect the junior’s “sense of responsibility and individual integrity by which men judge men.” Dennis v. United States, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734. So, if, as in the hypothetical case cited by the board of review, the convening authority designates two officers to serve on a court, one of whom is the normal reporting senior of the other, no reasonable man would believe that the senior is put in a position to exert undue control over the deliberations of the other. Their association as court members and the submission of a fitness report is not incompatible. We seriously doubt that either member would give thought to the fact that one is charged with the responsibility of reporting on the general fitness of the other.
(Emphasis added.)
Moreover, the military judge was also correct in suggesting that the fact a number of members of the panel were subject to the military supervision or evaluation of the president of the court-martial did not per se require disqualification of that officer. See United States v. Harris, 13 MJ 288, 292 (CMA 1982); United States v. Blocker, 32 MJ 281, 286-87 (CMA 1991). Appellant’s counsel, however, argued at trial that the number in his case, a clear majority of the panel, created a particular appearance of unfairness:
So, if a reporter from the newspaper came in and said, ‘You mean to tell me that five of these guys work for the President?” I think that a reasonable number of the American public who read that newspaper would say, ‘Yeah, right,” about the military justice system. And that’s why I’m saying in this case, five’s a lot.
(R. at 166).
In my view, attributing such skepticism to the American people was unwarranted, and *185 the military judge acted properly in rejecting it. Cf. Weiss v. United States, 510 U.S. 163, 194, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994) (Ginsburg, J., concurring) (“Today’s decision upholds a system of military justice notably more sensitive to due process concerns than the one prevailing through most of our country’s history____”). Moreover, the members of the panel in this case took an oath to “faithfully and impartially try, according to the evidence, [their] conscience[s], and the laws applicable to trials by court-martial, the case of the accused____” Manual, supra at A8-11. There is no support in this record to show that there was any likelihood that the panel in this case would be intimidated by the Brigade Commander into violating this oath.
In this regard, I note that in 1968, Congress specifically amended Article 37, UCMJ, to expressly prohibit the rating or evaluation of court members on their court-martial duty performance. Article 37(b) now states:
(b) In the preparation of an effectiveness, fitness, or efficiency report, or any other report or document used in whole or in part for the purpose of determining whether a member of the armed forces is qualified to be advanced, in grade, or in determining the assignment or transfer of a member of the armed forces or in determining whether a member of the armed forces should be retained on active duty, no person subject to this chapter may, in preparing any such report (1) consider or evaluate the performance of duty of any such member as a member of a court-martial[.\
(Emphasis added.) I believe the American public is well aware of this bedrock of modern military law and would consider its statutory protection when forming a judgment as to the appearance of fairness of appellant’s court-martial panel. See also Weiss v. United States, supra at 180-81, 114 S.Ct. 752 (due process evaluated by Supreme Court in view of Article 37, UCMJ); see generally United States v. Schlamer, 52 MJ at 93-94 (entire context of record to be considered).
Finally, I note that the evidence in this case showed brigade relationships between COL Williams and the other members of the panel, but that it also showed appellant was not a member of that brigade. See United States v. Ai, 49 MJ at 5. In addition, as noted by the military judge below, the record before us does not directly or indirectly implicate any particular interest of COL Williams or his brigade in the successful prosecution of this case. Cf. United States v. Rome, 47 MJ 467 (1998) (military supervisor member previously accused of unlawful command influence at prior court-martial by defense counsel). Finally, the extensive inquiry of the members by the trial judge did not disclose any other factual circumstance from which the public would perceive that unreasonable demands were being placed on the challenged members in this case by asking them to sit with COL Williams. See United States v. Youngblood, 47 MJ at 343 (Sullivan, J., concurring in part and dissenting in part).
In closing, today’s holding by the majority effectively bars commanders from sitting on courts-martial where their subordinate officers constitute a significant number of the members of the panel. Thus, it may preclude courts-martial in small commands or on ships, where procuring members outside the local chain of command is not a realistic option. I do not believe this is the will of Congress. See generally Article 5, UCMJ, 10 USC § 805 (the UCMJ applies in territory worldwide).
Congress and the President, not this Court, should make these important decisions. See United States v. Scheffer, 523 U.S. at 303, 118 S.Ct. 1261. Accordingly, I dissent.

. Interestingly, this policy is in sharp contrast with current practice in the British criminal justice system. In Britain, attorneys are not allowed to voir dire or cross-examine the jurors to ferret out possible grounds for bias, as is common in American criminal trials. As a result, very little is known about individual jurors, and attorneys rarely have grounds to support a challenge for cause. See Sean Enright, Reviving the Challenge for Cause, 139 New Law Journal 9 (1989).