UNITED STATES, Appellant and
Cross-Appellee,

v.

Robert E. MURPHY, Jr., Staff Sergeant,
U.S. Air Force, Appellee and
Cross-Appellant.

No. 56,897.

ACM 25477.

U.S. Court of Military Appeals.

Sept. 26, 1988.

For Appellant: *Major William J. Reichart* (argued); *Colonel Leo L. Sergi* (on brief); *Major Charles E. Ambrose, Jr.* and *Major Timothy J. Malloy.*

For Appellee: *Lieutenant Colonel Morris A. Tanner, Jr.* (argued); *Colonel Joe R. Lamport* and *Lieutenant Colonel Robert E. Giovagnoni* (on brief).

*Opinion of the Court*

COX, Judge:

The accused was tried by a general court-martial composed of officer members at Royal Air Force Bentwaters, England. Pursuant to his pleas, he was found guilty of sodomy with a child under the age of 16 years, assault and battery on his wife, and eleven specifications alleging taking indecent liberties or committing indecent acts with a female under the age of 16, in violation of Articles 125, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 925, 928, and 934, respectively. He was sentenced to confinement for 10 years, reduction to E–1, and a dishonorable discharge. The convening authority approved the sentence. Citing *United States v. Harris,* 13 M.J. 288 (C.M.A.1982), the Court of Military Review held that the military judge erred in failing to grant challenges against two senior members of the court-martial, because they wrote or endorsed the effectiveness reports on two other

members. 23 M.J. 690 (1986). On reconsideration, although recognizing factual distinctions between *Harris* and the case at bar, the court adhered to its original decision establishing a *per se* rule of disqualification of a member who rates or endorses the effectiveness report of other members of that court-martial. 23 M.J. 764 (1986). The Judge Advocate General certified the following issue to this Court:

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED AS A MATTER OF LAW IN ESTABLISHING A RULE THAT A MEMBER WHO WRITES OR ENDORSES THE OER [OFFICER EFFECTIVENESS REPORT] OF ANOTHER MEMBER IS *PER SE* SUBJECT TO A CHALLENGE FOR CAUSE.

Additionally, this Court granted review of the following issues upon a cross-petition filed by the accused:

## I

WHETHER THE MILITARY JUDGE ERRED BY REFUSING TO ADMIT INTO EVIDENCE DEFENSE EXHIBIT V, AN EXCERPT FROM CHAPTER V of AFR 125–18.

## II

WHETHER THE MILITARY JUDGE ERRED BY PREVENTING DEFENSE COUNSEL FROM ARGUING ANY PERIOD OF CONFINEMENT OVER EIGHTEEN MONTHS WOULD MOST LIKELY PREVENT THE ACCUSED FROM BEING ACCEPTED INTO THE 3320th CORRECTION AND REHABILITATION SQUADRON (CRS).

We will address the certified issue first. Upon *voir dire,* the president of the court-martial stated that he was in the chain-of-command of two junior members and that, while he was normally not their reporting official, he might be required to sign as an additional rater if the senior officer of the unit was not present. Additionally, another senior member observed that he was the reporting official for one other member and a reporting official once removed for a second member. All of the members involved in the chain-of-command or rating regime raised during *voir dire* agreed that rank or position of the senior members would not affect their ability to render impartial judgment. The military judge, after noting the disclaimers and the demeanor of the members involved, denied the defense challenges to the two senior members.

■ We hold that the Court of Military Review erred in establishing a *per se* rule of disqualification for a senior member of the court-martial who writes or endorses an efficiency report of a junior member.

Although we held that a senior member of a court-martial who rated other members was disqualified in *United States v. Harris, supra,* an examination of that case reveals that additional and more compelling reasons supported the conclusion that the member was disqualified. Specifically, the lead opinion observed that the member in question also worked closely with and rated two of the victims of the thefts for which the accused was charged and was chairman of the base-resource protection committee. Additionally, two of the victims had advised him of some of the facts of the case. Indeed, in his opinion concurring in the result, Judge Cook observed that "[b]y far the most significant of the allegedly disqualifying factors cited was ... [the member's] professional relationship with two of the seven theft victims." *Id.* at 293. Furthermore, although the member's endorsing or writing efficiency reports of three other persons was one of several factors in *Harris,* the lead opinion relied upon *United States v. Deain,* 5 U.S.C.M.A. 44, 17 C.M.R. 44 (1954). An examination of *Deain* reflects that it, too, was based on factors in addition to the one at issue. Specifically, the author of the lead opinion in *Deain* observed:

It may be conceded that the mere fact that the senior, or other member of the court, coincidentally has the duty to prepare and submit a fitness report on a junior member, in and of itself, does not

affect the junior's "sense of responsibility and individual integrity by which men judge men." *Dennis v. United States*, 339 U.S. 162, 94 L.Ed. 734, 70 S.Ct. 519. So, if, as in the hypothetical case cited by the board of review, the convening authority designates two officers to serve on a court, one of whom is the normal reporting senior of the other, no reasonable man would believe that the senior is put in a position to exert undue control over the deliberations of the other. Their association as court members and the submission of a fitness report is not incompatible. We seriously doubt that either member would give thought to the fact that one is charged with the responsibility of reporting on the general fitness of the other. However, there is a different situation in the instant case. 5 U.S.C.M.A. at 52, 17 C.M.R. at 52. While the senior member in *Deain* wrote the efficiency reports of other members, the efficiency reports in question were not the "usual kind." Rather, the senior officer was judging, within the context of the efficiency report, the members' performance of duty as permanent members of a court-martial, rather than the performance of other military duties. Furthermore, the senior member in question acknowledged that he gave new court members pretrial

"indoctrinations," which contained his interpretations of the law. Thus, neither *United States v. Harris* nor *United States v. Deain*, both *supra*, can be read as establishing a *per se* rule for disqualification of a senior court member who prepares and submits a fitness report on a junior member in the normal course of events.

■ In ruling on the qualifications of court members who are not specifically disqualified within the provisions of R.C.M. 912(f)(1), Manual for Courts-Martial, United States, 1984, we have shown great deference to the military judge's exercise of discretion. *United States v. Huitt*, 25 M.J. 136 (C.M.A.1987); United States v. Towers, 24 M.J. 143 (C.M.A.1987); *United States v. Reynolds*, 23 M.J. 292 (C.M.A.1987). We have examined the evidence presented in this record and conclude that it supports the military judge's conclusion that the challenged members could decide the case based solely on the evidence and without regard to their relationships with the other members. Accordingly, we hold that the Court of Military Review erred as a matter of law in applying a *per se* disqualification predicated solely on the fact that a senior member of the court-martial is involved in writing or endorsing the effectiveness reports of junior members.*

---

* I have attempted to fashion an opinion based upon what I believe is a correct interpretation of Article 25, Uniform Code of Military Justice, 10 U.S.C. § 825, and the earlier precedents of this Court. I also have tried to create a rule of law in harmony with constitutional precedents. *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). In view of Chief Judge Everett's opinion, I feel obligated to express several personal concerns about the Air Force Court's interpretation of our earlier cases. Before doing so, however, I shall go on record as agreeing with the principle that convening authorities should avoid placing superior-subordinate combinations on courts-martial to the extent practicable.

I see at least three reasons why I disagree with the construction given *United States v. Harris*, 13 M.J. 288 (C.M.A.1982), by the Court of Military Review and Chief Judge Everett:

1. Congress intended for the services to have a *Uniform* Code of Military Justice, not one that is *service-unique*.

2. Congress created the military judge. We have consistently and liberally given military

judges the tools to deal with challenges for cause and peremptory challenges and have admonished them to use this power liberally. *See United States v. Carter*, 25 M.J. 471 (C.M.A. 1988); *United States v. Huitt*, 25 M.J. 136 (C.M. A.1987); *United States v. Towers*, 24 M.J. 143 (C.M.A.1987); *United States v. Reynolds*, 23 M.J. 292 (C.M.A.1987). Let's give the judges the opportunity to use these tools. I am an advocate of selecting as military judges, intelligent, capable men and women of integrity and ethics, and then *trusting them* to ferret out and destroy evils and "the appearance of evil." I am comfortably confident in my opinion that the Air Force and the other military services have selected such persons to serve as judges and base my position on what I have observed when personally reading the thousands of records of trial that pass through my Chambers.

3. Lastly, and most importantly, the *per se* disqualification rule is an affront to the integrity and character of our field-grade officers, and I refuse to subscribe to it. In the almost 4 years I have served on this Court, I have reviewed

■ Turning to the granted issues, we note that defense counsel attempted to introduce an extract of Air Force Regulation 125–18, which sets forth criteria governing an accused's eligibility for entry into the 3320th Correction and Rehabilitation Squadron. He particularly wanted to emphasize in argument that as a criterion for eligibility, an accused must have no more than 18 months of approved confinement remaining to be served. We recently observed in *United States v. Griffin*, 25 M.J. 423 (C.M.A.), *cert. denied*, — U.S. —, 108 S.Ct. 2849, 101 S.Ct. 886 (1988), that an accused should be sentenced without regard to the collateral administrative consequences of the sentence in question. *Accord United States v. Quesinberry*, 12 U.S.C.M.A. 609, 31 C.M.R. 195 (1962). Therefore, we hold that the military judge's rulings excluding this evidence were within the bounds of his discretion.

The decision of the United States Air Force Court of Military Review as to the sentence is reversed. The record of trial is returned to the Judge Advocate General of the Air Force for resubmission to that court for further review of the sentence.

SULLIVAN, Judge (concurring with reservations):

I concur with the holdings and the text of the majority opinion. However, since the footnote is personal in nature, I do not adopt it.

EVERETT, Chief Judge (concurring in part and dissenting in part):

I

In *United States v. Deain*, 5 U.S.C.M.A. 44, 17 C.M.R. 44 (1954), this Court invalidated an arrangement whereunder a Navy Admiral served as permanent president of a general court-martial and submitted to the convening authority fitness reports on two other members of the court-martial. Although we expressed doubt that the impartiality of a court-martial member would be negated simply because one was "the normal reporting senior of the other," *id.* at 52, 17 C.M.R. at 52, we concluded that, under the circumstances, the "freedom and independence of action" of the two members had been unduly threatened. Therefore, the findings and sentence were "set aside"; and, in "the interests of justice," the charges were dismissed. *Id.* at 53, 17 C.M.R. at 53.

In 1968, as a result of congressional concern about the possible use "of an effectiveness, fitness, or efficiency report" to influence the action of court members, Article 37 of the Code, 10 U.S.C. § 837, was amended to prohibit consideration of "the performance of duty of any" person "as a member of a court-martial" in preparing such a report on that person.[1] Art. 37(b); Pub.L.No. 90–632, § 2(13)(D), 82 Stat. 1338. Moreover, in order to assure that the judges of Courts of Military Review would retain their independence, Congress amended Article 66(g) of the Code, 10 USC § 866(g), to prohibit a "member of a Court of Military Review" from "prepar[ing] ... or submit[ting] ... an effectiveness, fitness, or efficiency report" on any other member of a Court of Military Review. Pub.L.No. 90–632, § 2(27)(E), 82 Stat. 1341.

In *United States v. Harris*, 13 M.J. 288, 292 (C.M.A.1982), we were concerned with a defense challenge for cause of a court member who "wrote or endorsed the fitness reports of three other members." De-

---

over 10,000 courts-martial. I do not recall—but I stand to be corrected—reviewing a record of trial that has contained a *single allegation* by any court member that he or she has been threatened or intimidated into a particular course of action by a senior member's role in the preparation of efficiency reports. I do not recall having heard a single allegation that an efficiency report has been downgraded as a result of service as a court-martial member. Indeed, the congressional hearings giving rise to

the Uniform Code of Military Justice prove that a driving force behind the creation of the Code was to eliminate such coercion. Article 37(b), UCMJ, 10 U.S.C. § 837, reflects this concern.

1. Article 37 also was amended to provide that a service member may not be "give[n] a less favorable rating ... because of the zeal with which such member, as counsel, represented any accused before a court-martial." *See* Art. 37(b).

spite protestations by all concerned that this relationship would not influence their respective independence of judgment, we noted that, "where circumstances are present which raise 'an appearance of evil' in the eye of disinterested observers, mere declarations of impartiality, no matter how sincere, are not sufficient by themselves to insure legal propriety." (Footnote omitted.)

Clearly, both Congress and this Court are concerned about possible misuse of personnel reports to inhibit the independence of court-martial members. Nevertheless, I conclude that neither the Code nor our decision in *Harris* requires a *per se* rule of disqualification if one member of a court-martial rates another member. Instead, impartiality can be assured by means of proper *voir dire* on the part of the judge and counsel, liberality in granting challenges for cause, and instructions by the military judge to the court-martial members that for anyone to consider their performance as members in preparing a fitness report would violate the Uniform Code, *see* Art. 37, and might well be a crime, *see* Art. 98, UCMJ, 10 U.S.C. § 898.

## II

The Court of Military Review held that a challenge for cause should be sustained when one member of a court-martial is "in the ordinary course of affairs in [the] direct supervisory chain" of another member. 23 M.J. 764, 765 (1986). If the court below concluded that this *per se* rule was required by *Harris* or by the Code, then it was in error. If, however, the Court of Military Review concluded that, within the Air Force, such a *per se* rule should be enforced for administrative convenience and in order to avoid "an appearance of evil," then I believe that such a decision was within their power. These appellate military judges are much more familiar than are the judges of this Court with the Air Force system of officer effectiveness reports, the impact of low ratings on a recipient's professional career, the effect of the rating system on the behavior of the persons rated, and the difficulties in apply-

ing such a rule in the field. In my view, they are entitled to rely on their experience in overseeing the administration of military justice in the Air Force.

Admittedly, adoption of a *per se* rule of disqualification by the Air Force Court of Military Review might lead to divergence in practice between that service and the other services. However, in light of the variations in practice that exist in several other areas—such as in plea bargaining and in the methods for delivering defense services—I would not be troubled if the Air Force subjects itself to a more stringent standard than do its sister services. In my view the power of the Air Force Court of Military Review with respect to that service is like the supervisory power of a United States Court of Appeals within its circuit. *Cf. United States v. Boston,* 7 M.J. 954 (A.F.C.M.R.1979) (on reconsideration).

Admittedly, it may be inconvenient to appoint court-martial members of whom none is in a direct supervisor-subordinate relationship. However, the Court of Military Review has the experience to evaluate the magnitude of the problems that will be created in this regard. Moreover, that court can decide whether it is simpler and less time-consuming to use a *per se* rule than to engage in extensive *voir dire* of the court members about their perceptions as to the effects of a supervisor—subordinate relationship among some of the members. That court can determine how important it is to avoid the possibility that someone who has served on a court-martial and has not been promoted or obtained a favorable assignment will complain later that he was discriminated against by a supervisor who had served on a court-martial with him.

The Court of Military Review decided to apply its rule of disqualification prospectively—except for Murphy. Even though such an approach was permissible at one time, *see Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), apparently the Supreme Court no longer will allow an overruling decision to be made applicable only to the case in

which it was rendered and not to other cases that also were undergoing review. *See Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). However, I am of the view that a decision can be made entirely prospective in its application. *Cf. United States v. Carter,* 25 M.J. 471 (C.M.A.1988). Thus, I would not apply the *per se* rule of disqualification, even with respect to the challenges for cause in the present case.

It is unclear to me whether the Court of Military Review applied its *per se* rule of disqualification because it believed this was desirable for trials by court-martial in the Air Force or whether, instead, it felt such a result was compelled by our decision in *Harris.* I would, therefore, remand the case to the court below, which may then decide independently as to the need for a rule of *per se* disqualification in the Air Force.[2]

2. In my view, determination of the need for a *per se* rule of disqualification should be decided for each service by the Court of Military Review which reviews the trials by court-martial in that service and which is familiar with the personnel practices in that service. *Cf. United States v. Johanns,* 20 M.J. 155 (C.M.A.), *cert. denied,* 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985) (relying on a determination by the Air Force Court of Military Review as to the customs of that service concerning fraternization).