UNITED STATES, Appellee

v.

Robert J. WIESEN, Sergeant
U.S. Army, Appellant

No. 01-0134/AR

Crim. App. No.  9801770

_____

United States Court of Appeals for the Armed Forces

Argued May 22, 2001

Decided December 13, 2001

BAKER, J., delivered the opinion of the Court, in which GIERKE
and EFFRON, JJ., joined.  CRAWFORD, C.J., and SULLIVAN, S.J.,
each filed a dissenting opinion.


Counsel

For Appellant:  Captain Sean S. Park (argued); Colonel Adele H.
Odegard, Lieutenant Colonel David A. Mayfield, and Major
Jonathan F. Potter (on brief).

For Appellee:  Captain Karen J. Borgerding (argued); Colonel
David L. Hayden Lieutenant Colonel Edith M. Rob and  Major
Anthony P. Nicastro (on brief).


Military Judge:  Kenneth D. Pangburn

**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION**.

Judge BAKER delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of two specifications of attempted forcible sodomy with a child, indecent acts with a child, and obstruction of justice, in violation of Articles 80 and 134, Uniform Code of Military Justice (UCMJ), 10 USC §§ 880 and 934, respectively. He was sentenced to a dishonorable discharge, confinement for twenty years, total forfeitures, and reduction to grade E-1. The convening authority approved the findings and sentence as adjudged. The court below set aside the finding of guilty of obstruction of justice, dismissed that specification, affirmed the remaining findings, and upon reassessment, affirmed the sentence.

This Court granted review of the following issue:

> WHETHER THE MILITARY JUDGE ABUSED HIS
> DISCRETION BY VIOLATING THE MANDATE TO GRANT
> CHALLENGES FOR CAUSE LIBERALLY WHEN HE
> WRONGLY DENIED THE DEFENSE'S CHALLENGE FOR
> CAUSE AGAINST A PANEL MEMBER WHO WAS THE
> SUPERVISOR/RATER FOR SIX OTHER MEMBERS OF
> THE PANEL.

For the reasons set forth, we find that the military judge abused his discretion when he denied the challenge for cause against Colonel (COL) Williams. Thus, we reverse.

Background

At trial, appellant elected to be tried by a panel of both officer and enlisted members. Ten members reported to the court-martial. COL Williams, a brigade commander, was the senior member.

During the military judge's preliminary voir dire of the members, the following information was revealed:

> MJ: Is any panel member in the rating chain, supervisory chain, or chain of command of any other panel member? If so, raise your hand.
>
> Colonel Williams, who's under your command or rating chain?
>
> MEM [COL WILLIAMS]: [Lieutenant] Colonel Mereness is a battalion commander for me, [Lieutenant] Colonel Rogers is a battalion commander for me, Major Gonsalves is a battalion XO [executive officer] for me. [Lieutenant] Colonel Hough is my forward support battalion commander and the first sergeant down there at the end is also in my chain.
>
> MJ: First Sergeant Waters. Who else?
>
> MEM [COL WILLIAMS]: Command Sergeant Major Arroyo also is in my BCT [Brigade].

Civilian defense counsel attempted to exercise a challenge for cause to remove COL Williams, based on implied bias, because of his supervisory position over six of the panel members. After questioning the members, the military judge denied the challenge for cause, stating:

> MJ: Well, if this were some sort of military offense that occurred in the 2nd Brigade [COL Williams's Brigade], I might look at it differently. But for a

United States v. Wiesen, No. 01-0134/AR

     case of this type, I think the panel members can each
     approach this with an individual voice and
     consideration.  They've all indicated that they could
     express their opinions' freely and openly and that
     they would not be inhibited or unduly influenced by
     any superior.

     Your challenge for cause is denied.

Defense counsel subsequently exercised his peremptory challenge against COL Williams and stated that, but for the military judge's denial of his challenge for cause against COL Williams, he would have peremptorily challenged Major Gonsalves.

## Discussion

### Testing Impartiality

As a matter of due process, an accused has a constitutional right, as well as a regulatory right, to a fair and impartial panel.  United States v. Mack, 41 MJ 51, 54 (CMA 1994); see RCM 912(f)(1)(N), Manual for Courts-Martial, United States (2000 ed.).[1]  Indeed, "[i]mpartial court-members are a sine qua non for a fair court-martial."  United States v. Modesto, 43 MJ 315, 318 (1995).  That is not to say that an accused has a right to the panel of his choice, just to a fair and impartial panel.  Id. The UCMJ and common law incorporate a number of methods to

---

[1] This Manual provision is identical to the one in effect at the time of appellant's court-martial.

4

validate this right, including voir dire, the challenge for cause, and the peremptory challenge.

In this case, appellant takes issue with the judge's application of, or to be more precise, his failure to apply his authority to remove a potential member for cause. RCM 912(f)(1)(N) provides that "[a] member shall be excused for cause whenever it appears that the member . . . [s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." In furtherance of this principle, this Court has determined that a member shall be excused in cases of actual bias or implied bias. United States v. Napoleon, 46 MJ 279, 282-83 (1997); United States v. Minyard, 46 MJ 229, 231 (1997); United States v. Daulton, 45 MJ 212, 217 (1996); United States v. Harris, 13 MJ 288, 292 (CMA 1982). Further, "we have urged a 'liberal' view on granting challenges for cause." United States v. Dale, 42 MJ 384, 386 (1995). Thus, "[m]ilitary judges must follow the liberal-grant mandate in ruling on challenges for cause…." Daulton, supra, quoting United States v. White, 36 MJ 284, 287 (CMA 1993).

"The test for actual bias is whether any bias 'is such that it will not yield to the evidence presented and the judge's instructions.'" Napoleon, 46 MJ at 283, quoting United States v. Reynolds, 23 MJ 292, 294 (CMA 1987). "While actual bias is

5

United States v. Wiesen, No. 01-0134/AR

reviewed through the eyes of the military judge or the court members, implied bias is reviewed under an objective standard, viewed through the eyes of the public." Id., quoting Daulton, supra. The focus "is on the perception or appearance of fairness of the military justice system." Dale, 42 MJ at 386. At the same time, this Court has suggested that the test for implied bias also carries with it an element of actual bias. Thus, there is implied bias when "most people in the same position would be prejudiced." United States v. Armstrong, 54 MJ 51, 53-54 (2000), quoting United States v. Warden, 51 MJ 78, 81 (1999); United States v. Smart, 21 MJ 15, 20 (CMA 1985). This Court has also determined that when there is no actual bias, "implied bias should be invoked rarely." United States v. Rome, 47 MJ 467, 469 (1998).

Given the factual underpinning for testing actual bias, we review a military judge's findings regarding actual bias for an abuse of discretion. Napoleon, 46 MJ at 283. On the other hand, issues of implied bias, which entail both factual inquiry and objective application of legal principle, are reviewed under a less deferential standard. Armstrong, 54 MJ at 54, quoting Warden, supra.

## Implied Bias

In the case at hand, appellant did not, and does not, challenge the composition of his panel on the grounds of actual

6

bias. These officers and senior enlisted personnel, who swore to defend the Constitution, stated to a federal judge that they would not be swayed by the Brigade Commander because he was their commanding, rating, or supervising officer. COL Williams stated that he would not expect any jury room deference given his position. Appellant does not challenge the veracity of these voir dire responses. Rather, defense counsel challenged on the grounds of implied bias, citing to this Court's decision in Rome. Thus, in accord with this Court's precedent on RCM 912 and implied bias, including Rome, Daulton, and Dale, the issue here is one of public perception and the appearance of fairness in the military justice system.

It is well settled that a senior-subordinate/rating relationship does not per se require disqualification of a panel member. Rome, 47 MJ at 469; White, 36 MJ at 287; United States v. Murphy, 26 MJ 454, 455 (CMA 1988), and 28 MJ 232 (CMA), cert. denied, 490 U.S. 1107 (1989); see Harris, 13 MJ at 292.[2]

---

[2] Murphy and Harris both involve instances of multiple superior/subordinate relationships between members. In Murphy, the President of the court-martial was in the chain of command of two junior members and may have been required to sign as a rater for them if their senior officer was not present. Yet another member was the reporting official for one other member and a "reporting official once removed for a second member." 26 MJ at 455. This Court held that the lower court erred because it established "a per se rule of disqualification for a senior member of the court-martial who writes or endorses an efficiency report of a junior member." Id. In Harris, the President of the court "wrote or endorsed the fitness reports of three other members of the court." 13 MJ at 292. Furthermore, the President worked with two of the victims of the appellant's larcenies and talked about these larcenies with the victims before the trial. Finally this member, by

However, beyond that principle, this Court has struggled to define the scope of implied bias, or perhaps just disagreed on what that scope should be. The dissent in Rome argued that this Court had adopted a Justice Potter Stewart – "I know it when I see it" – standard when it comes to implied bias. 47 MJ at 472. However, while this Court's application of implied bias may evolve with case law, at its core remains a concern with public perception and the appearance of fairness in the military justice system.

In Murphy and Harris, this Court tested the presence of two and three members on panels that included their rating officers. In contrast, in this case the President of the panel and his subordinates comprised the two-thirds majority sufficient to convict, a factual scenario outside the margin of tolerance reflected in our case law. Thus, appellate review of this case neither requires application of per se principles nor rejection of Rome's guidance that implied bias should be invoked rarely.

Where a panel member has a supervisory position over six of the other members, and the resulting seven members make up the

---

virtue of his position, had an official interest in discouraging larcenies like the ones appellant had committed. This Court held that since the military judge relied only on the disclaimers made by the challenged member during voir dire, her decision to deny the challenge for cause was in error on the question of implied bias. Id. That the challenged member rated three other members was not the main factor. In his concurring opinion, Judge Cook noted that "[b]y far the most significant of the allegedly disqualifying factors cited was [the challenged member's] professional relationship with two of the seven theft victims." Id. at 293.

two-thirds majority sufficient to convict, we are placing an intolerable strain on public perception of the military justice system. This is a contextual judgment. The President anticipated in the preamble to the Manual for Courts-Martial that judges would need to carefully balance national security with individual rights in applying the UCMJ. That preamble states: "The purpose of military law is to promote justice, to assist in maintaining good order and discipline in the armed forces, to promote efficiency and effectiveness in the military establishment, and thereby to strengthen the national security of the United States."

What is reasonable and fair from the public's perception, as well as this Court's judgment as to what is reasonable and fair, would be different in the case of national security exigency or operational necessity. In a particular case, operational needs may impact the availability of members of a command, thereby significantly limiting the pool from which potential members might be selected. Here, deployed units may have diminished the potential pool of members, but the Government failed to demonstrate that it was <u>necessary</u> for the Brigade Commander to serve on this panel. The record shows that there were at least two combat brigades at Fort Stewart at the time of trial, in addition to support elements, from which to select a qualified member in lieu of COL Williams.

In short, in this case, the Government has failed to demonstrate that operational deployments or needs precluded other suitable officers from reasonably serving on this panel, thus necessitating the Brigade Commander's participation.

To address this issue from the standpoint of performance reports misses the point. With or without the prohibition against unlawful command influence under Article 37, UCMJ, 10 USC § 837, we reject the notion that officers and non-commissioned officers, who swear to uphold the Constitution, might breach that oath willfully in the deliberation room in an effort to influence a performance report. The American public should and does have great confidence in the integrity of the men and women who serve in uniform, including their integrity in the jury room.

However, public perception of the military justice system may nonetheless be affected by more subtle aspects of military life. An objective public might ask to what extent, if any, does deference (a.k.a. respect) for senior officers come into play? The public perceives accurately that military commissioned and non-commissioned officers are expected to lead, not just manage; to command, not just direct; and to follow, not just get out of the way. For lack of a more precise term, appellant's trial defense counsel described this concern as

creating "the wrong atmosphere."[3]  In this context, there is simply too high a risk that the public will perceive that the accused received something less than a jury of ten equal members, although something more than a jury of one.

We also disagree with the military judge's suggestion that he might treat the question of implied bias differently in a case involving an offense particular to the military justice system, as opposed to one of child abuse.  Implied bias undermines public confidence in the military justice system regardless of the offense.[4]

Whether one agrees with appellant that the panel would constitute a "brigade staff meeting" or not, we have no doubt that "viewed through the eyes of the public," serious doubts about the fairness of the military justice system are raised when the senior member of the panel and those he commanded or supervised commanded a two-thirds majority of members that alone could convict the accused.  This is not "knowing it when you see it," or appellate judges attempting to extrapolate "public

---

[3] Defense counsel stated:  "And that's just an awful lot of people who he influences.  And if you take him off, you don't have – you kind of break up that number of superior/subordinate rating chain relationships. . . .It creates the wrong atmosphere---."  We agree.  This is a different case without the presence of the brigade commander and six of his subordinates.

[4] We do not need to debate for the purpose of this appeal the implication that there is a qualitative difference between traditional military offenses, like desertion, and offenses committed by or against military personnel or their families, such as child abuse.  We find it hard to imagine that a commander would not consider both types of offenses with equal gravity and concern.

perceptions" from the bench.  This is a clear application of law to fact, and illustrates well why this court recognizes a doctrine of implied bias, as well as one of actual bias, in interpreting RCM 912.

For these reasons, the military judge abused his discretion when he failed to grant appellant's challenge for cause against COL Williams.[5]  Having found error, we must now test for prejudice.

## Prejudice

Appellant preserved this issue for appeal by peremptorily challenging COL Williams and indicating that, but for the military judge's denial of his challenge for cause, he would have used the peremptory challenge against another officer.

There is no constitutional right to a peremptory challenge. Ross v. Oklahoma, 487 U.S. 81, 88 (1988); Armstrong, 54 MJ at 54.  Therefore, if there is prejudice, its existence derives from the statutory and regulatory right to one peremptory challenge provided for in Article 41, UCMJ, 10 USC § 841, and RCM 912(g).  This Court recently addressed the question of

---

[5] Senior Judge Sullivan renews his opposition to this Court's precedent regarding implied bias as an interpretive framework for applying RCM 912. Senior Judge Sullivan may disagree with the majority view that where the President of a panel commands or supervises a two-thirds majority of court members sufficient to convict, serious doubts about the fairness of military justice are raised, but that does not make the majority view ultra vires. The duty of judges is to say what the law is.  Marbury v. Madison, 5 U.S. 137, 177 (1803).

prejudice in Armstrong, where the appellant also removed an issue of implied bias through exercise of his one peremptory challenge. In Armstrong, this Court held that the availability of a peremptory challenge does not remove the prejudice arising from an erroneous ruling on a challenge for cause. Id. at 55.

Armstrong remains the law in the military. When a statute or rule confers a right greater than the Constitution, an accused is entitled to the benefit of that greater right, unless it conflicts with a higher source of law. Armstrong, 54 MJ at 55; United States v. Davis, 47 MJ 484, 485-86 (1998). Accordingly, even though COL Williams was excused from the panel by a peremptory challenge, the military judge's denial of the challenge for cause against COL Williams prejudiced appellant's right to exercise a peremptory challenge against another member of his choice. To say that appellant cured any error by exercising his one peremptory challenge against the offending member is reasoning that, if accepted, would reduce the right to a peremptory challenge from one of substance to one of illusion only.

## Decision

Based on the foregoing, we hold that the military judge abused his discretion in denying the challenge for cause against COL Williams and that such error resulted in prejudice to appellant.

13

The decision of the United States Army Court of Criminal Appeals is reversed, and the findings of guilty and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A new trial may be ordered.

<u>United States v. Wiesen</u>, No. 01-0134/AR

CRAWFORD, Chief Judge (dissenting):

After the seven-game 1960 world series victory by my hometown Pittsburgh Pirates over the heavily favored New York Yankees, that ended when Bill Mazeroski hit a dramatic ninth inning home run over Yogi Berra's head and the left center field wall of Forbes Field, Yogi explained the loss by saying, "We made too many wrong mistakes."[1]  Unfortunately, our performance in the arena of implied bias is filled with inconsistency, if not "wrong mistakes," and today's decision only compounds the confusion.

It is unclear whether the doctrine of implied bias even exists as a matter of law.  See <u>Smith v. Phillips</u>, 455 U.S. 209 (1982); <u>United States v. Dinatale</u>, 44 MJ 325, 329 (1996)(Cox, C.J., concurring).  The Supreme Court has neither embraced nor rejected the doctrine.  <u>See</u>, <u>e.g.</u>, <u>Andrews v. Collins</u>, 21 F.3d 612, 620 (5th Cir. 1994); <u>Tinsley v. Borg</u>, 895 F.2d 520, 527 (9th Cir. 1990); <u>Person v. Miller</u>, 854 F.2d 656, 664 (4th Cir. 1988). If it does exist, a conflict exists among the federal Courts of Appeals concerning the standard of review and application of the doctrine.

---

[1]  Yogi Berra, <u>The Yogi Book</u> 34 (1998).

United States v. Wiesen, No. 01-0134/AR

The majority tests the military judge's denial of a causal challenge against Colonel (COL) Williams for abuse of discretion. ___ MJ at (12). We have previously held, on numerous occasions, that the proper standard of review is "clear abuse of discretion." See, e.g., United States v. White, 36 MJ 284, 287 (CMA 1993), cert. denied, 510 U.S. 1090 (1994); United States v. Dinatale, supra at 328; but see United States v. Warden, 51 MJ 78, 82 (1999)(abuse of discretion); compare United States v. Cerrato-Reyes, 176 F.3d 1253, 1260 (10th Cir. 1999)(a trial court's finding as to actual bias is reviewed for clear error, but the court's finding as to implied bias is reviewed de novo), with United States v. Ai, 49 MJ 1, 5 n.4 (1998)(declining to decide a "precise" standard for appellate review of implied bias challenges).

All military accused, like their counterparts in civilian criminal courts, have a right to a trial before an impartial factfinder. See Weiss v. United States, 510 U.S. 163, 179 (1994); Ai, supra at 4; RCM 912(f)(1), Manual for Courts-Martial, United States (2000 ed.). Assuming that the doctrine of implied bias does exist, other Courts of Appeals have limited its application to those exceptional and extraordinary circumstances where a juror's emotional attachment to an issue or participant in the court proceeding was such that it was very unlikely, by any objective measurement, that an average person

2

could remain impartial in deciding the merits of the case.  See United States v. Greer, 223 F.3d 41, 53 & n.3 (2d Cir. 2000) (Juror's failure to inform the court that he had been approached by an old acquaintance who was also a friend of the defendant's, about "lend[ing] a 'sympathetic ear,'" as well as this juror's inadequate response to a question concerning whether any of his relatives had been accused of a crime, did not justify a finding of implied bias.  The juror "was, after all, neither related to a party nor a victim of the defendants' crimes."); United States v. Polichemi, 201 F.3d 858, 863-64 (7th Cir. 2000)(Failure to excuse a fifteen-year employee of the same U.S. Attorney's Office that was prosecuting the case for implied bias was error.); Fitzgerald v. Greene, 150 F.3d 357, 365 (4th Cir. 1998)(Juror answered "No" to a question whether he or any member of his immediate family had been the victim of a rape, robbery, or abduction in a murder/rape/robbery trial.  During deliberations, this juror revealed that his granddaughter had been molested as a child.  The Court found no implied bias, since neither the juror nor anyone in his family was personally connected to any party in the case.).

See also Phillips, 455 U.S. at 222 (O'Connor, J., concurring); United States v. Gonzalez, 214 F.3d 1109 (9th Cir. 2000)(implied bias found when juror gave equivocal answers about whether her recent divorce and family breakup -- occasioned by

3

her ex-husband's use of cocaine, the same drug involved in the trial -- would affect her judgment adversely); <u>Dyer v. Calderon</u>, 151 F.3d 970 (9th Cir. 1998)(in a murder case, implied bias found when a juror, who had a brother murdered, failed to reveal this fact during <u>voir</u> <u>dire</u>); <u>Hunley v. Godinez</u>, 975 F.2d 316 (7th Cir. 1992)(implied bias found when hotel rooms of the jurors, who were deliberating the defendant's fate in a murder and burglary trial, were broken into); <u>Burton v. Johnson</u>, 948 F.2d 1150 (10th Cir. 1991)(implied bias found when both juror and accused had been in abusive family situations); <u>United States v. Eubanks</u>, 591 F.2d 513 (9th Cir. 1979)(implied bias found where a juror in a heroin distribution case had sons who were heroin users and were serving prison sentences); <u>United States v. Allsup</u>, 566 F.2d 68 (9th Cir. 1977)(implied bias found in a bank robbery trial by seating jurors who worked for a different bank which had been robbed); <u>Jackson v. United States</u>, 395 F.2d 615 (D.C. Cir. 1968)(implied bias found in a juror who had been involved in a love triangle similar to the one at trial); <u>United States ex rel. De Vita v. McCorkle</u>, 248 F.2d 1 (3d Cir. 1957)(implied bias found when a juror was a robbery victim and defendant was on trial for robbery).

4

Unlike other courts,[2] the majority finds that implied bias is an issue "of public perception and the appearance of fairness in the military justice system," ___ MJ at (7), not one of individual court member disqualification based on that member's bias.  The majority finds reversible error in the composition of the court-martial panel because COL Williams's presence erodes public confidence in the "legality, fairness, and impartiality" of the military justice system.  See RCM 912(f)(1)(N).  Since I have a bit more confidence in the judgment of the American public than does the majority, I find no clear abuse of discretion in the military judge's denial of the causal challenge.

---

[2]  The origin of "implied bias" in this Court can be traced to Judge Fletcher's individual opinion in United States v. Harris, 13 MJ 288, 292 (CMA 1982).  See United States v. Daulton, 45 MJ 212, 217 (1996).  Implied bias was not a new concept.  In United States v. Wood, 299 U.S. 123, 133 (1936), the Supreme Court held that "[t]he bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as a matter of law."  In support of his implied bias argument, Judge Fletcher relied on United States v. Deain, 5 USCMA 44, 17 CMR 44 (1954), and Irvin v. Dowd, 366 U.S. 717 (1961).  These two cases reinforced the basic criminal law concept that an accused is entitled to be judged by one who is impartial, that is, one who has an open mind and is fair.

In the two decades that this Court has wrestled with the doctrine of implied bias, the focus of this Court has shifted from examining whether an average person, sitting in the position of the court member in controversy, would be fair and open-minded, to a concern about the impartiality of our military judicial system in the eyes of the public at large.  Justice O'Connor's admonition in Smith v. Phillips, 455 U.S. 209, 222 (1982) (O'Connor, J., concurring), that implied bias be reserved for only the most exceptional circumstances seems to have been forgotten, or like some unfortunate aspects of our society, what used to be the exception has now become routine.  See United States v. Smart, 21 MJ 15 (CMA 1985); United States v. Glenn, 25 MJ 278, 280 (CMA 1987); United States v. Napoleon, 46 MJ 279, 283 (1997); United States v. Warden, 51 MJ 78, 81 (1999); United States v. Armstrong, 54 MJ 51, 53-54 (2000).

The American public with which I am familiar is both perceptive and informed.  When presented with all the facts, it is most capable of making a fair and reasoned judgement.  It is not limited to a handful of individuals dedicated either to vilifying or lionizing the role of a convening authority in the selection of court-martial members.  The informed public understands the differences between courts-martial with members and trials in the civilian sector with civilian jurors.  American citizens are also capable of understanding the differences between the military justice system and the various civilian criminal law systems, and knowing that in the military justice system, a convening authority selects court-martial members "by reason of age, education, training, experience, length of service, and judicial temperament."  Art. 25(d)(2), UCMJ, 10 USC § 825(d)(2).[3]  The public can also understand why

---

[3]  The convening authority, normally a senior commander in a chain-of-command, has always occupied a prominent role in military justice.  After World War II, in response to numerous complaints of perceived injustices, there were a number of investigating committees.  Many of the organizations investigating the state of military justice, to include the American Bar Association's Vanderbilt Committee, the American Legion, and the Veterans of Foreign Wars, advocated curtailing, if not removing, the convening authority from his central role in the court-martial process.  The Secretary of War rejected changes that precluded a commander from appointing and reviewing courts-martial.  See Gerald F. Crump, Part II:  A History of the Structure of Military Justice in the United States, 1921-1966, 17 Air Force L. Rev. 55, 58-60 (1975); 1 Francis A. Gilligan & Fredric I. Lederer, Court-Martial Procedure §§ 1-44.00 & 1-45.00 at 14-16 (2d ed. 1999).

Passage of the National Security Act of 1947 and the creation of the Department of Defense brought forth new legislation to make military justice uniform among all the services.  Although the Elston Bill made many reforms in the military justice arena, "Congress acquiesced in the Army's unwillingness to surrender the commander's control of court-martial processing, but it made coercion of the court a criminal offense.  The

court-martial members have been referred to as blue ribbon panels due to the quality of their membership.  See United States v. Youngblood, 47 MJ 338, 346 (1997)(Crawford, J., dissenting); United States v. Rome, 47 MJ 467, 471 (1998)(Crawford, J., dissenting).

---

drafters felt that this provision, coupled with the broadening of review and establishment of an independent Judge Advocate General's Corps, was a sufficient check on the commander's abuse of his powers."  Crump, supra at 63 (footnotes omitted).  Like most legislation, the Uniform Code of Military Justice represented a compromise, designed to ensure fairness in courts-martial proceedings.  In particular, commanders still convened and reviewed courts-martial, but did so under exacting guidelines in such areas as legal advice, court-martial member selection, and a prohibition against unlawful command influence.

Military justice has not been static, as it perhaps was in the middle of the Twentieth Century.  Congress recently ordered a study on the selection of court-martial members.  See Strom Thurmond National Defense Authorization Act for Fiscal Year 1999, Pub. L. No. 105-261, § 552, 112 Stat. 1920, 2023 (1998).  After reexamining the role of the convening authority in the selection of court members and the exploration of alternatives, the Department of Defense Joint Service Committee on Military Justice concluded that the current system of selecting and detailing court-martial members "best applies the criteria in Article 25(d), UCMJ, in a fair and efficient manner," and "[t]he role of the convening authority in the court member selection process should not be changed."  Report on the Method of Selection of Members of the Armed Forces to Serve on Courts-Martial 46-47 (1999)(hereinafter DoD Report).

Military justice can and should be a dynamic process, where introspection and reexamination take place.  Cf. Report of the Commission on the 50th Anniversary of the Uniform Code of Military Justice (2001).  It would appear, as my colleague Judge Effron recently opined, that "Congress ... has been sensitive to the need for fairness in military justice proceedings.  In Article 25, Congress has provided members of the armed forces with a valuable protection by requiring the convening authority personally to select those members of the armed forces 'best qualified' to serve as court members by reason of judicial temperament and related statutory criteria."  See United States v. Benedict, 55 MJ 451, 458 (2001)(Effron, J., dissenting).

The thoughtful, conscientious public with which I am familiar would first want to know the facts before jumping to a conclusion.  The record of trial establishes the following facts:

(1) COL Williams, the 2d Brigade Commander, was a permanent member of Court-Martial Convening Order Number 4.  Lieutenant Colonel (LTC) Rogers, one of COL Williams's battalion commanders, as well as LTC Rogers's executive officer (XO), Major (MAJ) Gonsalves, were also permanent members of Court-Martial Convening Order Number 4.  Command Sergeant Major (CSM) Arroyo was also designated as a member by this Court-Martial Order whenever an accused requested enlisted membership on the court.

(2) LTC Mereness and LTC Hough were detailed to appellant's court-martial only by Court-Martial Convening Order Number 6.

(3) LTC Hough was a Forward Support Battalion (FSB) commander assigned to the Division Support Command.  He had a command supervisory relationship with COL Williams only when LTC Hough's battalion was in direct support of the 2d Brigade, such as during deployment situations.

(4) COL Williams only had rating responsibility for three members -- his two battalion commanders, LTC Rogers and LTC Mereness, and LTC Rogers's XO, MAJ Gonsalves.  The record

8

discloses that COL Williams was the reviewer of First Sergeant Waters's enlisted efficiency report, but not a rater.

(5) Appellant challenged three individuals based on implied bias at trial -- COL Williams, MAJ Gonsalves, and CSM Arroyo. There is no stated rationale why trial defense counsel challenged the most senior member of the panel (COL Williams), but then challenged two subordinates (MAJ Gonsalves and CSM Arroyo) instead of those members' superior officers, LTC Rogers and LTC Hough, respectively.

(6) The military judge found that there were two combat brigades with the 3d Infantry Division stationed at Fort Stewart, one of which was deployed to Kuwait. The military judge also correctly found that the FSB (LTC Hough and CSM Arroyo) was not a part of the 2d Brigade.[4]

Of course, an astute and inquisitive general public would not be limited to the record of trial when gathering facts to test the fairness and impartiality of appellant's court martial. Inquiring minds would also discover that one of Fort Stewart's

---

[4] While I fully agree with the majority's view that what is "reasonable and fair from the public's perception" might differ based on national security exigencies or military necessity, I totally disagree with the majority's shifting the burden to the Government to demonstrate necessity for a particular member's service on the panel. ___ MJ at (9). This burden shifting eviscerates Article 25, as well as the presumption of regularity associated with the selection of court members by the convening authority.

brigades was deployed, shrinking the potential pool from which the General Court-Martial Convening Authority could select members.

Since the informed and reasonable American public understands the structure of the United States armed forces, to include the necessity for superior-subordinate relationships, the public would disagree with the majority when it finds that COL Williams had a superior-subordinate relationship with six of the other nine members.  Actually, COL Williams was superior to all of the other members of the court-martial panel.  Furthermore, the public would understand that the president of every court-martial is superior in rank to all other members of the panel.  Since the public will accept the majority recognizing that the members were, in fact, impartial, and will know that appellant has not challenged the veracity of any individual member's responses to voir dire questions, the inquiring public could be perplexed by the majority's logic.

Finally, I believe that the American public, after reading the Supreme Court's views in Weiss v. United States, 510 U.S. 163 (1994), and looking at the legislative history of Article 37, UCMJ, 10 USC § 837, would have no difficulty with the various working relationships among the court members who adjudicated appellant's court-martial.  However, the American public might be skeptical of this Court, which accords military

10

judges "great deference" on questions of actual bias (because the trial judge has observed the demeanor of the participants),[5] but gives less deference on questions of implied bias, presumably because we can gauge the perception of the American public better than a trial judge.[6]  Perhaps the informed American public, cognizant of the purpose of military justice, the history of the Uniform Code of Military Justice, and the creation of this Court, might ask why we have such limited confidence in a military judge's ability to understand and make reasoned, informed decisions about the impartiality of court-martial members.

In sum, the average American would find that since the first combat brigade at Fort Stewart was deployed to Kuwait at the time of trial, appellant's court-martial members were selected out of elements of the 3d Infantry Division remaining at Fort Stewart.  After examining all of the underlying evidence associated with appellant's court-martial and knowing all the facts, I believe a reasonable member of the public would find no unfairness, bias, or other illegality in the selection of those

---

[5]  See United States v. Giles, 48 MJ 60, 63 (1998); United States v. Lavender, 46 MJ 485, 488 (1997); United States v. Napoleon, 46 MJ 279, 283 (1997); United States v. White, 36 MJ 284, 287 (CMA 1993).
[6]  We have forgotten our observation in United States v. Smart, 21 MJ 15, 19 (CMA 1985), that "[t]here are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion, absent clear abuse, than in ruling on challenges for cause in the empaneling of a jury." (citations omitted); see also United States v. Greer, 223 F.3d 41, 53 (2d Cir. 2000).

members who heard appellant's court-martial, or in the denial of

the challenge for cause against COL Williams.

> The fundamental goal of a military court-martial
> member selection system, as in civilian society,
> is to identify and select a panel of court-
> martial members that is competent, fair, and
> impartial.  A military system, however, must also
> produce panel members who are available without
> unduly restricting the conduct of the military
> mission or national security.

Department of Defense Joint Service Committee on Military

Justice, Report on the Method of Selection of Members of

the Armed Forces to Serve on Courts-Martial 8 (1999).  This

goal was achieved in this case.  Accordingly, I would

affirm the decision of the Court of Criminal Appeals.

United States v. Wiesen, 01-0134/AR


SULLIVAN, Judge (dissenting):


THE MAJORITY'S HOLDING

The majority effectively holds today that where one officer commands a significant number of the members of a panel, he may not sit as a member of that panel if challenged by the defense. The Congress and the President are the lawmakers for the military justice system, and they have not made such a rule. Based on all the circumstances of this case, I conclude that the military judge did not abuse his discretion when he refused to grant the defense challenge to Colonel (COL) Williams. See United States v. Ai, 49 MJ 1, 5 (1998).

In my view, the majority's holding in this case creates new law, and it is law which Congress or the President should make, not the judiciary. See U.S. Const. Art. I, § 8, cl. 16; Article 36, UCMJ, 10 USC § 836. Congress could have provided that a member shall be disqualified if he or she is the military commander of a significant number of the members of the panel. See Article 25(d), UCMJ, 10 USC § 825(d) ("No member of an armed force is eligible to serve as a member of a general or special court-martial when he is the accuser or a witness for the prosecution or has acted as investigating officer or as counsel in the same case."). Congress has been aware that, for years, commanders have sat on panels with their subordinates. Congress could have prohibited this situation by law but failed to do so.

A court should not judicially legislate when Congress, in its wisdom, does not.

With respect to judicial rulemaking (the clone of judicial legislation), the President, acting pursuant to Article 36, UCMJ, could also have provided that a challenge must be granted where a member is a brigade commander of a significant number of the members of a court-martial panel.  RCM 912(f)(1), Manual for Courts-Martial, United States (1998 ed.), states:

> (f)  Challenges and removal for cause.
>
> (1) Grounds.  A member shall be excused for cause whenever it appears that the member:
>
> (A) Is not competent to serve as a member under Article 25(a), (b), or (c);
>
> (B) Has not been properly detailed as a member of the court-martial;
>
> (C) Is an accuser as to any offense charged;
>
> (D) Will be a witness in the court-martial;
>
> (E) Has acted as counsel for any party as to any offense charged;
>
> (F) Has been an investigating officer as to any offense charged;
>
> (G) Has acted in the same case as convening authority or as the legal officer or staff judge advocate to the convening authority;
>
> (H) Will act in the same case as reviewing authority or as the legal

> officer or staff judge advocate to the
> reviewing authority;
>
> (I) Has forwarded charges in the case
> with a personal recommendation as to
> disposition;
>
> (J) Upon a rehearing or new or other
> trial of the case, was a member of the
> court-martial which heard the case before;
>
> (K) Is junior to the accused in grade or
> rank, unless it is established that this
> could not be avoided;
>
> (L) Is in arrest or confinement;
>
> (M) Has informed [sic] or expressed a
> definite opinion as to the guilt or
> innocence of the accused as to any offense
> charged;
>
> (N) Should not sit as a member in the
> interest of having the court-martial free
> from substantial doubt as to legality,
> fairness, and impartiality.

The President could have made a new rule barring commanders of a significant number of other members of a panel from sitting on a court-martial, but he did not. Like judicial legislation, courts should refrain from judicial rulemaking. See generally United States v. Torres, 128 F.3d 38, 45 n.8 (2nd Cir. 1997) (noting that many states have statutes that set forth conduct or status disqualifying jurors without regard to actual bias).

Congress has provided that a military accused may make challenges for cause, and the military judge is to decide these challenges. Article 41(a)(1), UCMJ, 10 USC § 841(a)(1). The President, pursuant to Article 36, UCMJ, has specifically

delineated circumstances where a challenged member shall be excused. As noted above, nowhere is it said that a member shall be excused because he is the military commander of a significant number of the members of the panel. See RCM 912(f)(1)(A)-(N). Congress passed the UCMJ legislation knowing that this law was intended to apply to remote bases and posts, as well as to ships at sea. Congress did not see fit to disqualify commanders from sitting on military juries in these circumstances. Accordingly, I must reject this Court's attempt to fashion such a rule to the contrary. See generally United States v. Scheffer, 523 U.S. 303 (1998) (the President, not the Court of Appeals for the Armed Forces, makes the rules for courts-martial).

To the extent that the majority relies on RCM 912(f)(1)(N) as the legal basis or authority for its holding in this case, I also must disagree. It generally says:

> A member shall be excused for cause whenever it appears that the member . . .
>
> (N) should not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality.

In my view, RCM 912(f)(1)(N) does not contemplate mandatory exclusion rules such as that fashioned by the majority in this case. See United States v. Greer, 223 F.3d 41, 52 (2nd Cir. 2000) (defining inferred bias in terms of facts which permit a judge to remove a member in the judge's discretion). Instead, it

4

calls for discretionary judgement by the trial judge, based on all the circumstances of a particular case. See United States v. Smart, 21 MJ 15, 20 (CMA 1985); see also para. 58e, Manual for Courts-Martial, U.S. Army, 1928 ("appreciable risk of injury to the substantial rights of an accused, which risk will not be avoided by a reading of the record"); see also United States v. Warden, 51 MJ 78, 82 (1999); United States v. Ai, 49 MJ at 5; United States v. Minyard, 46 MJ 229, 231-32 (1997).

My analysis shows that the trial judge did not abuse his discretion in this case. The judge exercised his discretion with no knowledge that this Court would expand the law as the majority does today. When the judge made his ruling that is overturned today by the majority, there was no case law suggesting this holding. Interestingly enough, the majority cites no case law as support for this new extension of the law.

<u>Review for Abuse of</u>
<u>Discretion by the Trial Judge</u>

The assigned legal question before us is whether the military judge abused his discretion when he denied the defense's challenge for cause against COL Williams. Appellant asserts that the judge clearly did, especially in light of the military justice system's "liberal grant policy" for such challenges, [1]

---

[1] Interestingly, this policy is in sharp contrast with current practice in the British criminal justice system. In Britain, attorneys are not allowed to voir dire or cross-examine the jurors to ferret out possible grounds for bias, as is common in

United States v. Wiesen, 01-0134/AR

see <u>United States v. Dinatale</u>, 44 MJ 325, 327-28 (1996), and certain facts in this case showing "implied bias." <u>See</u> <u>United States v. Daulton</u>, 45 MJ 212, 217 (1996). Appellant particularly argues that COL Williams's role as a brigade commander of a majority of the panel members created an appearance of unfairness as to these proceedings. (R. at 166); <u>see</u> <u>generally</u> <u>United States v. Smart</u>, 21 MJ at 18 (citing catchall challenge provision of RCM 912(f)(1)(N)); <u>see</u> <u>United States v. Dale</u>, 42 MJ 384 (1995); <u>United States v. Minyard</u>, 46 MJ at 229; <u>see</u> <u>also</u> <u>United States v. Torres</u>, 128 F.3d at 47.

Implied bias has been said to exist in military law when, "regardless of an individual member's disclaimer of bias, 'most people in the same position would be prejudiced [<u>i.e.</u>, biased].'" <u>United States v. Napolitano</u>, 53 MJ 162, 167 (2000) (quoting <u>United States v. Schlamer</u>, 52 MJ 80, 93 (1999)); <u>cf</u>. <u>United States v. Greer</u>, 223 F.3d at 52-53 (in federal civilian system, challenges must be granted on basis of implied bias if court concludes "an average person in the position of the juror in controversy would be prejudiced"). It calls for a judgment by the military judge on the propriety of a challenged member or members sitting in a case, <u>through the eyes of the public</u>. Implied bias focuses on "the perception or appearance of fairness

American criminal trials. As a result, very little is known about individual jurors, and attorneys rarely have grounds to support a challenge for cause. <u>See</u> Sean Enright, <u>Reviving the Challenge for Cause</u>, 139 New Law Journal 9 (1989).

6

of the military justice system," rather than the actual existence of bias.  United States v. Napoleon, 46 MJ 279, 283 (1997).

Appellant complains that the presence of COL Williams on a panel where so many members were subject to his command supervision created an appearance of its unfairness.  Appellant argues "[e]ven with the panel members' disclaimers, an outside observer would reasonably perceive the court-martial to be unfair when COL Williams, a brigade commander, held such an influential position over a majority of the panel members.  See (R. at 146.); [United States v.] Youngblood, 47 MJ [338,] 341 [(1997)]; RCM 912(f)(1)(N).  The perception of unfairness," appellant further argues, "increases exponentially considering the fact that, including himself, COL Williams held a commander, supervisor or rating position over enough panel members (seven of ten) to convict SGT Wiesen. (R. at 136-7, 146.); see RCM 921(c)(2)(B)." Final Brief at 7.

The military judge, however, provided several reasons for his rejection of the defense challenge for cause against COL Williams.  First, the judge stated that military case law did not require him to grant such a challenge simply because a challenged member had a military supervisory relationship over another panel member.  Second, the judge asserted that such a relationship, even with a majority of the members, would not be a significant factor raising a suspicion of unfairness in a case where that

command's organizational interests were not directly at issue. Third, the judge noted that the extensive voir dire of all the members of the court-martial panel established no other circumstances suggesting COL Williams should not sit in this case in the interest of the appearance of fairness.

In my view, the military judge did not abuse his discretion in denying the defense challenge for cause for these reasons. See generally United States v. Napolitano, 53 MJ at 167. He correctly recognized that a military supervisory relationship over another member, including writing the subordinate's fitness report, does not per se disqualify the supervisor from sitting on a court-martial panel with his subordinate. See United States v. Murphy, 26 MJ 454, 455 (CMA 1988). On this matter, we have generally subscribed to Chief Judge Quinn's view, expressed long ago in United States v. Deain, 5 USCMA 44, 52, 17 CMR 44, 52 (1954):

> [T]he mere fact that the senior, or other member of the court, coincidentally has the duty to prepare and submit a fitness report on a junior member, in and of itself, does not affect the junior's 'sense of responsibility and individual integrity by which men judge men.' Dennis v. United States, 339 U.S. 162, 94 L.Ed. 734, 70 S.Ct. 519. So, if, as in the hypothetical case cited by the board of review, the convening authority designates two officers to serve on a court, one of whom is the normal reporting senior of the other, no reasonable man would believe that the senior is put in a position to exert undue control over the deliberations

> of the other.  Their association as court
> members and the submission of a fitness
> report is not incompatible.  We seriously
> doubt that either member would give
> thought to the fact that one is charged
> with the responsibility of reporting on
> the general fitness of the other.

(Emphasis added.)

Moreover, the military judge was also correct in suggesting that the fact a number of members of the panel were subject to the military supervision or evaluation of the president of the court-martial did not per se require disqualification of that officer.  See United States v. Harris, 13 MJ 288, 292 (CMA 1982); United States v. Blocker, 32 MJ 281, 286-87 (CMA 1991). Appellant's counsel, however, argued at trial that the number in his case, a clear majority of the panel, created a particular appearance of unfairness:

> So, if a reporter from the newspaper came
> in and said, "You mean to tell me that
> five of these guys work for the
> President?"  I think that a reasonable
> number of the American public who read
> that newspaper would say, "Yeah, right,"
> about the military justice system.  And
> that's why I'm saying in this case, five's
> a lot.

(R. at 166).

In my view, attributing such skepticism to the American people was unwarranted, and the military judge acted properly in rejecting it.  Cf. Weiss v. United States, 510 U.S. 163, 194 (1994) (Ginsburg, J., concurring) ("Today's decision upholds a

9

system of military justice notably more sensitive to due process concerns than the one prevailing through most of our country's history . . . ."). Moreover, the members of the panel in this case took an oath to "faithfully and impartially try, according to the evidence, [their] conscience[s], and the laws applicable to trials by court-martial, the case of the accused . . . ." Manual, supra at A8-11. There is no support in this record to show that there was any likelihood that the panel in this case would be intimidated by the Brigade Commander into violating this oath.

In this regard, I note that in 1968, Congress specifically amended Article 37, UCMJ, to expressly prohibit the rating or evaluation of court members on their court-martial duty performance. Article 37(b) now states:

> (b) In the preparation of an effectiveness, fitness, or efficiency report, or any other report or document used in whole or in part for the purpose of determining whether a member of the armed forces is qualified to be advanced, in grade, or in determining the assignment or transfer of a member of the armed forces or in determining whether a member of the armed forces should be retained on active duty, no person subject to this chapter may, in preparing any such report (1) consider or evaluate the performance of duty of any such member as a member of a court-martial[.]

(Emphasis added.) I believe the American public is well aware of this bedrock of modern military law and would consider its

10

statutory protection when forming a judgment as to the appearance of fairness of appellant's court-martial panel.  See also Weiss v. United States, supra at 180-81 (due process evaluated by Supreme Court in view of Article 37, UCMJ); see generally United States v. Schlamer, 52 MJ at 93-94 (entire context of record to be considered).

Finally, I note that the evidence in this case showed brigade relationships between COL Williams and the other members of the panel, but that it also showed appellant was not a member of that brigade.  See United States v. Ai, 49 MJ at 5.  In addition, as noted by the military judge below, the record before us does not directly or indirectly implicate any particular interest of COL Williams or his brigade in the successful prosecution of this case.  Cf. United States v. Rome, 47 MJ 467 (1998) (military supervisor member previously accused of unlawful command influence at prior court-martial by defense counsel).  Finally, the extensive inquiry of the members by the trial judge did not disclose any other factual circumstance from which the public would perceive that unreasonable demands were being placed on the challenged members in this case by asking them to sit with COL Williams.  See United States v. Youngblood, 47 MJ at 343 (Sullivan, J., concurring in part and dissenting in part).

In closing, today's holding by the majority effectively bars commanders from sitting on courts-martial where their subordinate

officers constitute a significant number of the members of the panel.  Thus, it may preclude courts-martial in small commands or on ships, where procuring members outside the local chain of command is not a realistic option.  I do not believe this is the will of Congress.  See generally Article 5, UCMJ, 10 USC § 805 (the UCMJ applies in territory worldwide).

Congress and the President, not this Court, should make these important decisions.  See United States v. Scheffer, 523 U.S. at 303.  Accordingly, I dissent.